**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-7841**

UNITED STATES OF AMERICA,

              Plaintiff-Appellee,

        v.

WESLEY DEVON FOOTE,

              Defendant – Appellant,

-----------------------------------------

NORTH CAROLINA ADVOCATES FOR JUSTICE,

              Amicus Supporting Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. N. Carlton Tilley, Jr., Senior District Judge. (1:06-cr-00177-NCT-1; 1:11-cv-00042-NCT-JEP)

Argued: March 25, 2015                    Decided: April 27, 2015

Before DUNCAN, KEENAN, and THACKER, Circuit Judges.

Affirmed by published opinion. Judge Thacker wrote the opinion, in which Judge Duncan and Judge Keenan joined.

**ARGUED:** John Clark Fischer, RANDOLPH & FISCHER, Winston-Salem, North Carolina, for Appellant. Ripley Eagles Rand, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for

Appellee.  Jaclyn Lee DiLauro, HOGAN LOVELLS US LLP, Washington, D.C., for Amicus Curiae.  **ON BRIEF:** Michael F. Joseph, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.  Noell Tin, TIN FULTON WALKER & OWEN, PLLC, Charlotte, North Carolina; Neal Kumar Katyal, HOGAN LOVELLS US LLP, Washington, D.C., for Amicus Curiae.

———————

THACKER, Circuit Judge:

Wesley Devon Foote ("Appellant") appeals the district court's denial of his petition for collateral relief filed pursuant to 28 U.S.C. § 2255. The district court concluded that Appellant's petition, which was based on the argument that his career offender designation was later nullified under our decision in United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc), does not present a claim that is cognizable on collateral review.

The language of § 2255 makes clear that not every alleged sentencing error can be corrected on collateral review. The Supreme Court has instructed that only those errors presenting a "fundamental defect which inherently results in a complete miscarriage of justice" are cognizable. Davis v. United States, 417 U.S. 333, 346 (1974) (internal quotation marks omitted). We are not convinced that Appellant's pre-Simmons career offender designation meets this high bar. Neither Appellant's federal offense of conviction nor his state convictions qualifying him as a career offender have been vacated, he was sentenced under an advisory sentencing scheme, and we are hesitant to undermine the judicial system's interest in finality to classify a Sentencing Guidelines error as a fundamental defect. Therefore, we affirm the district court.

I.

A.

On July 13, 2006, Appellant pled guilty to three counts of distribution of crack cocaine after previously being convicted of a felony drug offense, a conviction that carried a statutory maximum sentence of life in prison. See 21 U.S.C. §§ 841(a)(1), (b)(1)(B). On January 10, 2007, the district court found Appellant to be a "career offender" and sentenced him to 262 months in prison.

Pursuant to the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"), a defendant can be designated a career offender if

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a) (2005) (emphasis supplied). A "controlled substance offense" is defined as "a[] [drug] offense under federal or state law, punishable by imprisonment for a term exceeding one year." Id. § 4B1.2(b). Appellant's presentence investigation report ("PSR") listed, inter alia, two North Carolina convictions for possession with intent to sell cocaine. For the first conviction, which occurred in 1995, Appellant was

4

sentenced to 10-12 months in prison (the "1995 conviction"); for the second, which occurred in 2002, he was sentenced to 13-16 months in prison (the "2002 conviction").

At the time of Appellant's federal sentencing, this court "determine[d] whether a conviction is for a crime punishable by a prison term exceeding one year [under North Carolina law,] [by] consider[ing] the maximum aggravated sentence that could be imposed for that crime upon a defendant with the worst possible criminal history." United States v. Harp, 406 F.3d 242, 246 (4th Cir. 2005) (second emphasis supplied). Appellant's 1995 conviction was for a Class H felony, see N.C. Gen. Stat. § 90-95(a)(1), (b)(1) (2005), which carried a maximum aggravated sentence of well over 12 months in prison, id. § 15A-1340.17(c). Therefore, under Harp, Appellant was convicted of a crime punishable by a "prison term exceeding one year," even though his actual sentence did not exceed one year.

Based on the 1995 and 2002 convictions, the PSR recommended that Appellant be designated a career offender, and the district court agreed. As a result, Appellant's offense level rose from 32 to 37 (with a subsequent three-level reduction for acceptance of responsibility), and his advisory Guideline range jumped from 151-188 to 262-327 months in prison.

5

See U.S.S.G. § 4B1.1(b)(1).[1]    The district court sentenced Appellant at the bottom of the Guidelines range.

Appellant, questioning the propriety of his career offender status, appealed from this judgment.  Relying on Harp, we affirmed.  See United States v. Foote, 249 F. App'x 967, 969 (4th Cir. 2007).    However, the Supreme Court vacated and remanded for consideration in light of Kimbrough v. United States, 552 U.S. 85 (2007) (approving deviation from advisory Guidelines range for crack cocaine offenses).  See Foote v. United States, 552 U.S. 1163 (2008).  On remand, the district court declined to vary below the Guidelines range and filed an amended judgment on November 13, 2009, sentencing Appellant to the same amount of time in prison -- 262 months.  See United States v. Foote, No. 1:06-cr-177 (M.D.N.C. Nov. 13, 2009).  The district court explained,

> I do not have a basis to make th[e] decision
> [about what the proper crack to powder ratio
> should be].  . . .  I look to see where you
> are with regard to the other factors in
> 3553(a), and you've got prior controlled
> substance violations.    You've got an
> assault.    On your own, without the
> application of the career offender
> provisions, you got 17 criminal history
> points . . . .  I would be glad to consider,
> if the [crack/powder cocaine equivalency]

---

[1] Appellant's criminal history category was already at level VI, so the career offender designation had no effect on that level.

> change is made, how that does effect [sic] your sentence at that point, and adjust the sentence accordingly.

Trans. at 10, Foote, No. 1:06-cr-177 (filed Oct. 15, 2009), ECF No. 31. Foote appealed from the amended judgment, but we again affirmed. See United States v. Foote, 395 F. App'x 49, 51 (4th Cir. 2010). On January 21, 2011, Appellant filed a petition for collateral relief pursuant to 28 U.S.C. § 2255, again arguing that the district court erred in sentencing him as a career offender.[2]

Seven months later, while Appellant's petition was pending, this court decided United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc). In Simmons, this court addressed whether a certain North Carolina crime could serve as a predicate "felony drug offense" conviction for purposes of a sentencing enhancement under the Controlled Substance Act (the "CSA"). See id. at 249; see also 21 U.S.C. § 841(b)(1)(B)(vii) (providing that first-time offenders who possess 100 kilograms or more of marijuana "after a prior conviction for a felony drug

---

[2] Meanwhile, Appellant filed a motion for retroactive application of the Guidelines to his crack cocaine offense pursuant to 18 U.S.C. § 3582(c)(2). The motion was denied on February 8, 2011, because Appellant had already "received the benefits of a two-level reduction in his cocaine base computation at his [Kimbrough] resentencing . . . ." Foote, No. 1:06-cr-177 (filed Feb. 8, 2011), ECF No. 50. Appellant did not appeal this determination.

7

offense has become final" are subject to a mandatory minimum sentence of 10 years (emphasis supplied)); id. § 802(44) (defining "felony drug offense" as a drug-related offense "that is punishable by imprisonment for more than one year under any [state] law"). Specifically, the court considered whether Simmons was entitled to relief because the crime that supported his sentencing enhancement -- a North Carolina conviction for possession with intent to sell no more than 10 pounds of marijuana -- was not an offense "punishable by imprisonment for more than one year" under the CSA. Simmons, 649 F.3d at 240-41.

Of course, at the time of Simmons's initial sentencing, Harp controlled. Following Harp, a Fourth Circuit panel initially rejected Simmons's challenge to his sentencing enhancement because North Carolina law dictated that the marijuana conviction could be a crime "punishable by a term exceeding one year" if two conditions were satisfied (even though they were not met in Simmons's case). See United States v. Simmons, 340 F. App'x 141, 144 (4th Cir. 2009). The Supreme Court remanded the case for consideration in light of Carachuri-Rosendo v. Holder, 560 U.S. 563, 570, 576 (2010) (holding that courts should look to the "conviction itself," rather than a crime or sentence with which the defendant "could have been" charged or assigned, in determining whether a previous conviction is an aggravated felony under the INA). See Simmons

8

v. United States, 130 S. Ct. 3455 (2010). On remand, this court affirmed Simmons's sentence despite Carachuri. See United States v. Simmons, 635 F.3d 140, 146-47 (4th Cir. 2011). The court then voted to rehear the case en banc.

On rehearing en banc, this court vacated Simmons's sentence and abrogated Harp in light of Carachuri. See Simmons, 649 F.3d at 239, 241. We held that because the state court that sentenced Simmons "never made the recidivist finding necessary to expose Simmons to a higher sentence," the Government was "precluded from establishing that a conviction was for a qualifying offense" under the CSA. Id. at 243 (internal quotation marks omitted). Two years later, this court held that Simmons can be retroactively applied on collateral review because it "announced a new substantive rule." Miller v. United States, 735 F.3d 141, 147 (4th Cir. 2013). Miller explained, "The Simmons decision changed the way this Court determines whether prior convictions for certain lower-level North Carolina felonies are punishable by more than one year in prison." Id. at 145.

Not surprisingly, Appellant amended his § 2255 petition, contending that under Simmons, his 1995 North Carolina conviction "is not punishable by more than a year" under the

9

Career Offender Guidelines. J.A. 58;[3] see U.S.S.G. § 4B1.1(a). He asks the court to "resentence him pursuant to . . . Simmons and use an individualized analysis[] in making it's [sic] determination." J.A. 58. He also asks that upon resentencing, the court should "[p]lace [him] in his proper guideline range, and credit him with all applicable reductions." Id. at 58-59.

B.

On September 24, 2013, a federal magistrate judge filed a Memorandum Opinion and Recommendation, recommending that Appellant's § 2255 motion be denied but that a certificate of appealability ("COA") be issued with regard to whether Appellant can assert a cognizable Simmons claim on collateral review. See Foote v. United States, No. 1:06-cr-177, 2013 WL 5355543, at *8-9 (M.D.N.C. Sept. 24, 2013). On November 7, 2013, the district court affirmed and adopted the Opinion and Recommendation and dismissed the habeas petition, but it issued a COA on the following issue:

> [W]hether Petitioner, who was sentenced as a career offender under U.S. Sentencing Guideline § 4B1.1, but who in fact was not a career offender in light of Simmons v. United States, can assert a cognizable claim under 28 U.S.C. § 2255, seeking to challenge a sentence that was below the statutory maximum that would still apply.

---

[3] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

10

Foote v. United States, No. 1:06-cr-177-1, 2013 WL 5962983, at *1 (M.D.N.C. Nov. 7, 2013).  Appellant filed a timely notice of appeal.[4]

This case was placed in abeyance pending our decision in United States v. Whiteside, which presented the cognizability issue we address today.  See 748 F.3d 541, 555 (4th Cir. 2014) (holding that Whiteside's one-year limitations period was equitably tolled and his Simmons claim was cognizable on collateral review), reh'g en banc granted, opinion vacated, 578 F. App'x 218 (4th Cir. 2014).  On rehearing en banc, however, the court affirmed dismissal of the habeas petition on statute of limitations grounds without reaching the cognizability issue. See Whiteside v. United States, 775 F.3d 180, 187 (4th Cir. 2014) (en banc).

---

[4] We note that the COA in this case does not mention a "denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2) and (c)(3).  However, the Government has not challenged the propriety of the COA, and at this late stage, we will not treat this potential defect as jurisdictional.  See Gonzalez v. Thaler, 132 S. Ct. 641, 649 (2012) (explaining that subsections (c)(2) and (c)(3) are "non-jurisdictional rule[s]" because they "speak[] only to when a COA may issue[;] [they] do[] not contain . . . jurisdictional terms."); Spencer v. United States, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) ("Neither issue in the certificate for this appeal even purports to involve an underlying error of constitutional magnitude, but we decline to vacate the certificate at this late hour.").

11

II.

In this appeal, we must determine whether the issue Appellant raises in his amended petition is one that we can entertain under 28 U.S.C. § 2255. This issue presents a pure question of law, which we review de novo. See United States v. Dodd, 770 F.3d 306, 309 (4th Cir. 2014); Spencer v. United States, 773 F.3d 1132, 1137 (11th Cir. 2014).

We note at the outset that the language of § 2255 is "somewhat lacking in precision." Davis v. United States, 417 U.S. 333, 343 (1974). What is clear, however, is that by its terms, § 2255 does not allow for a court's consideration and correction of every alleged sentencing error. See id. at 346. Rather, the statute provides four avenues by which a petitioner can seek relief:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). The Supreme Court has interpreted this provision such that if the alleged sentencing error is neither constitutional nor jurisdictional, a district court lacks

12

authority to review it unless it amounts to "a fundamental defect which inherently results in a complete miscarriage of justice." Davis, 417 U.S. at 346 (internal quotation marks omitted). This standard is only satisfied when a court is presented with "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Hill v. United States, 368 U.S. 424, 428 (1962) (internal quotation marks omitted). For the reasons that follow, we are constrained to decide that sentencing a defendant pursuant to advisory Guidelines based on a career offender status that is later invalidated does not meet this remarkably high bar.

## A.

In addressing collateral review claims brought under § 2255, the Supreme Court's decisions have defined the limits of the cognizability spectrum. In Davis, for example, the petitioner was convicted of failure to report for induction pursuant to Selective Service regulations. See 417 U.S. at 336. While his appeal was pending, the court of appeals reversed a conviction based on facts "virtually identical to those in [Davis's] case." Id. at 339. Davis filed a § 2255 petition, arguing that the intervening case required his conviction to be set aside. See id. at 340. The Government argued that his claim was not cognizable in a § 2255 collateral proceeding. The Court held that Davis's "conviction and punishment are for an

13

act that the law does not make criminal. There can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice and presents exceptional circumstances that justify collateral relief under § 2255." Id. at 346-47 (internal alterations and quotation marks omitted). Thus, from Davis we know that someone who is convicted based on conduct that is later rendered non-criminal can bring a cognizable § 2255 claim.[5]

On the other end of the spectrum, however, the Supreme Court has held that a district court's failure to follow procedural rules does not amount to a complete miscarriage of justice where there is no evidence the defendant was prejudiced. See Peguero v. United States, 526 U.S. 23, 24 (1999) (holding that a district court's failure to inform defendant of the right to appeal, where defendant knew of the right, was not a basis for § 2255 relief); United States v. Timmreck, 441 U.S. 780, 785

---

[5] Amicus also cites Johnson v. United States, 544 U.S. 295 (2005). See Amicus Br. 14. While Johnson declared, "a defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated," we are reluctant to give Johnson the weight amicus requests. Id. at 303. For one thing, Johnson was decided on timeliness -- not cognizability -- grounds, and for another, the above-quoted statement was mentioned in the context of assumptions made by previous Court decisions. In any event, even attributing the weight to Johnson that amicus requests, it merely reinforces the notion that cognizability is an easier question if an earlier conviction is actually vacated, which did not occur here.

14

(1979) (same, where district court failed to mention a special parole term at Rule 11 hearing); Hill, 368 U.S. at 429 (same, where sentencing judge failed to ask a defendant if he had anything to say at his sentencing hearing).

B.

Between these limits -- punishment for conduct later rendered non-criminal on one end and non-prejudicial procedural errors on the other -- the Supreme Court has also held that a petitioner's § 2255 claim that post-sentencing changes in Parole Commission policies prolonged his imprisonment beyond the period of time intended by the sentencing judge was not cognizable. See United States v. Addonizio, 442 U.S. 178, 190 (1979). The Court explained that because the sentence imposed by the district court was "within the statutory limits," and the proceedings were not "infected with any error of fact or law of the 'fundamental' character," the claim was not appropriate for § 2255 review. Id. at 186. The Court distinguished Davis, explaining that Davis involved "a change in the substantive law that established that the conduct for which petitioner had been convicted and sentenced was lawful." Id. at 186-87. In contrast, the challenge in Addonizio was "not of the same character": while it may have affected "the way in which the court's judgment and sentence would be performed," "it did not

15

affect the lawfulness of the judgment itself -- then or now." Id. at 187.

Also on the spectrum lie decisions from three of our sister circuits that have addressed cognizability arguments strikingly similar to the one with which we are presented. These circuits have yielded nationally consistent yet internally divided outcomes.

1.

First, the Seventh Circuit considered the petition of Narvaez, who was deemed to have committed two "crimes of violence," and therefore was designated a career offender. See Narvaez v. United States, 674 F.3d 621, 624 (7th Cir. 2011). Due to his designation, the Guidelines range for his sentence increased from 100-125 months to 151-188 months. See id. But post-sentencing, the Supreme Court decided Begay v. United States, 553 U.S. 137 (2008), and Chambers v. United States, 555 U.S. 122 (2009), which removed Narvaez's previous convictions from the "crime of violence" realm. The court held that the career offender designation and resulting increase in sentencing range was akin to the conviction in Davis, explaining, "to increase, dramatically, the point of departure for his sentence is certainly as serious as the most grievous misinformation that has been the basis for granting habeas relief [by the Supreme Court]." Narvaez, 674 F.3d at 629. However, the court

16

emphasized that "at the time of Mr. Narvaez's sentencing, the Guidelines were <u>mandatory</u>.  The imposition of a career offender status therefore increased the sentencing range the district court was authorized to employ."  <u>Id.</u> at 628-29 (emphasis in original).

The Seventh Circuit recently held, however, that under an advisory Guidelines scheme, a similar claim was not cognizable.  <u>See</u> <u>Hawkins v. United States</u>, 706 F.3d 820 (7th Cir. 2013).  There, the court explained,

> Narvaez, as our opinion emphasized, unlike Hawkins, had been sentenced when the guidelines were mandatory. . . . Before [United States v. ]<u>Booker</u>[, 543 U.S. 220 (2005)], the guidelines were the practical equivalent of a statute.
>
> . . . .
>
> The first step in sentencing -- calculating the guidelines range correctly -- was not changed by <u>Booker</u>.  But the step is less important now that the guidelines, including the career offender guideline, are merely advisory and the sentencing judge, being forbidden to presume the reasonableness of a guideline sentence, must make an independent determination of whether a guideline sentence would comport with the sentencing standard set forth in 18 U.S.C. § 3553(a).  That is a critical difference between <u>Narvaez</u> and the present case . . . .

<u>Id.</u> at 822-23 (citations omitted).  The <u>Hawkins</u> court also emphasized the importance of finality:

> There is a difference between reversing an error on appeal and correcting the error

17

> years later. An erroneous computation of an advisory guidelines sentence is reversible (unless harmless) on direct appeal; it doesn't follow that it's reversible years later in a postconviction proceeding. . . .
>
> An error in the interpretation of a merely advisory guideline is less serious [than sentence that exceeds the statutory maximum]. Given the interest in finality, it is not a proper basis for voiding a punishment lawful when imposed.

Id. at 824. For these reasons, Hawkins's sentence was not a "miscarriage of justice that can be collaterally attacked." Id. at 825 (internal quotation marks omitted). Therefore, the takeaway from the Seventh Circuit is that if a career offender defendant is sentenced below the statutory maximum post-Booker, his post-conviction challenge to the career offender status is not cognizable.

## 2.

The Eleventh Circuit reached a similar conclusion. In Spencer v. United States, a three-judge panel initially held that a petitioner's post-conviction challenge to his career offender designation was cognizable, explaining, "categorization as a career offender is not merely a formal requirement of a criminal procedural rule. The Guidelines are the heart of the substantive law of federal sentencing." 727 F.3d 1076, 1087 (11th Cir. 2013), reh'g en banc granted, opinion vacated (Mar. 7, 2014). The panel relied on the Supreme Court's recent Peugh

18

v. United States decision, wherein the Court dubbed the Guidelines the "lodestone of sentencing" and held that a post-conviction increase in the Guidelines range can create an ex post facto problem for those committing crimes under the previously lower range. See 133 S. Ct. 2072, 2084 (2013).

On rehearing en banc, however, the Spencer panel decision was overturned. See Spencer v. United States, 773 F.3d 1132 (11th Cir. 2014) (en banc). The majority explained, "Spencer cannot collaterally attack his sentence based on a misapplication of the advisory guidelines. Spencer's sentence falls below the statutory maximum, and his prior [qualifying] conviction . . . has not been vacated. Spencer's sentence was and remains lawful." Id. at 1135 (emphasis supplied). The dissent, joined by three judges, countered, "the fact that a sentence is deemed 'lawful' does not prohibit us from determining that a complete miscarriage of justice has occurred on collateral review." Id. at 1145 (Wilson, J., dissenting).

3.

Finally, the Eighth Circuit held in a panel decision that a post-conviction change that invalidates one's career offender status was cognizable on collateral review. See Sun Bear v. United States, 611 F.3d 925 (8th Cir. 2010), reh'g en banc granted, opinion vacated (Sept. 27, 2010). The panel reasoned,

19

> [W]e [have] held that ordinary questions of sentencing guideline interpretation falling short of the "miscarriage of justice" standard do not present a proper section 2255 claim.  However, Sun Bear's claim is more than a run-of-the-mill claim that the district court misapplied the sentencing guidelines.  This case is based on a post-conviction change in the law that renders unlawful the district court's sentencing determination.  "There can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice and presents exceptional circumstances that justify collateral relief under § 2255."

Id. at 930 (footnote, alterations, and some internal quotation marks omitted) (quoting Davis, 417 U.S. at 346-47).

But like the Eleventh Circuit, the Eighth Circuit overturned the panel decision on rehearing en banc.  See Sun Bear v. United States, 644 F.3d 700 (8th Cir. 2011) (en banc). The en banc majority held that the defendant's 360-month sentence handed down while the defendant was deemed a career offender "[wa]s not unlawful" because it was not "imposed without, or in excess of, statutory authority."  Id. at 705. However, the court also noted that Sun Bear's pre-enhancement Guidelines range was 292-365 months, so the ultimate sentence would have fallen within this range anyway.  See id. (noting, "the same 360-month sentence could be reimposed were Sun Bear granted the § 2255 relief he requests").

In sum, there is no decision left standing in any circuit whereby a challenge to one's change in career offender

20

status, originally determined correctly under the advisory Guidelines, is cognizable on collateral review. However, we cannot ignore that these decisions are extremely close and deeply divided.

C.

Turning now to our circuit, we have held that "misapplication of the sentencing guidelines does not amount to a miscarriage of justice." United States v. Mikalajunas, 186 F.3d 490, 495 (4th Cir. 1999); see also United States v. Pregent, 190 F.3d 279, 283–84 (4th Cir. 1999).

In United States v. Mikalajunas, the petitioner sought collateral review based on a misapplication of the "physical restraint" enhancement in the Guidelines. See 186 F.3d at 492; U.S.S.G. § 3A1.3. Like the case at hand, Mikalajunas argued that an intervening decision rendered the enhancement inapplicable to him. See 186 F.3d at 492. The court held that a claim that the district court erred in enhancing one's offense level "is merely an allegation of ordinary misapplication of the guidelines that does not amount to a miscarriage of justice." Id. at 496.

Similarly, in United States v. Pregent, this court addressed a petitioner's 18 U.S.C. § 3583(e) motion for reduction in his term of supervised release on the grounds that the district court misapplied the Guidelines. See 190 F.3d at

21

280. Construing the motion as a § 2255 petition, the court assumed without deciding that Pregent's motion stated a cognizable claim under § 2255, but nonetheless explained,

> Barring extraordinary circumstances, . . . an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding. Section 2255 provides relief for cases in which "the sentence was in excess of the maximum authorized by law." Thus, while § 2255 applies to violations of statutes establishing maximum sentences, it does not usually apply to errors in the application of the Sentencing Guidelines.

Id. at 283-84. The court then dismissed the petition as untimely. Id. at 284.

### III.

Considering where this case falls on the cognizability spectrum, we conclude Appellant's career offender designation was not a fundamental defect that inherently results in a complete miscarriage of justice.

### A.

First, in the rare cases in which the Supreme Court has found post-conviction "miscarriages of justice" to have occurred, it has relied on the actual innocence of the petitioner. The federal conviction that brought Appellant to court in the first place and the state convictions used to enhance his sentence have not been invalidated or vacated; thus,

22

it is difficult to place Appellant's case within the ambit of those decisions.

For example, in the 28 U.S.C. § 2254 habeas context, the Supreme Court has held that while interests in finality dictate that a court may not ordinarily reach the merits of a successive or abusive habeas claim, there is an exception: if failure to entertain the claim would result in a "fundamental miscarriage[] of justice." Schlup v. Delo, 513 U.S. 298, 315 (1995) (internal quotation marks omitted). The Court noted that the exception is based on the idea that "habeas corpus is, at its core, an equitable remedy," but it explained that the exception only applies to a "narrow class of cases" and should "remain rare" and only applied in the "extraordinary case." Id. at 319, 315, 321 (internal quotation marks omitted); see also Sawyer v. Whitley, 505 U.S. 333, 340 (1992) ("[W]e have emphasized the narrow scope of the fundamental miscarriage of justice exception." (emphasis supplied)). As a result, the miscarriage of justice exception in this context has historically been "tied . . . to the petitioner's innocence." Schlup, 513 U.S. at 321; see also United States v. MacDonald, 641 F.3d 596, 610-11 (4th Cir. 2011) ("[T]he exception for a fundamental miscarriage of justice requires a showing that 'a constitutional violation probably has caused the conviction of one innocent of the crime.'" (quoting McCleskey v. Zant, 499

23

U.S. 467, 494 (1991)); Wolfe v. Johnson, 565 F.3d 140, 160 (4th Cir. 2009) ("A proper showing of actual innocence is sufficient to satisfy the miscarriage of justice requirement." (internal quotation marks omitted)).

This is in accord with Davis, where the Supreme Court concluded that Davis's habeas claim amounted to a "complete miscarriage of justice" because he claimed that his underlying conviction was abrogated, i.e., he became actually innocent of the crime. See 417 U.S. at 346; see also id. at 344 ("[T]here can be no doubt that the grounds for relief under § 2255 are equivalent to those encompassed by § 2254 [and] § 2255 was intended to mirror § 2254 in operative effect.").

The Supreme Court has extended the concept of actual innocence to sentencing, but only capital sentencing. In Sawyer, the Court held that to excuse procedural default barring a challenge to petitioner's death sentence, the petitioner must show "actual innocence" of death penalty eligibility by proving "by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." 505 U.S. at 336.

Reading all of these cases together, it is clear that "miscarriages of justice" in the post-conviction context are grounded in the notion of actual innocence, and Appellant has

24

not been proven "actually innocent" of any of his prior convictions. Furthermore, to the extent Appellant argues that he is "actually innocent" of being a career offender, the Supreme Court has yet to stretch this Sawyer concept to non-capital sentencing, and we will not do so here.

B.

Second, we are hesitant to declare that a fundamental defect or a complete miscarriage of justice has occurred in a situation in which Appellant was (and on remand, would again be) sentenced under an advisory Guidelines scheme requiring individualized analysis of the sentencing factors set forth in 18 U.S.C. § 3553(a). District courts must make an independent determination that a Guidelines sentence, even one based on a career offender designation, would "comport with the sentencing standard set forth in 18 U.S.C. § 3553(a)." Hawkins v. United States, 706 F.3d 820, 823 (7th Cir. 2013). District courts may not even presume that a within-Guidelines sentence is reasonable. See Nelson v. United States, 555 U.S. 350, 352 (2009) ("The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." (emphases in original)). And a district court's error in its sentencing calculations is harmless if the court also provided justification for the sentence based on the § 3553(a) sentencing factors. See United States v. Evans, 526 F.3d 155, 165 (4th

25

Cir. 2008) ("[E]ven assuming the district court erred in applying the Guideline departure provisions, [the defendant's] sentence, which is well-justified by [the] § 3553(a) factors, is reasonable."). Thus, even if we vacate and remand at this juncture, the same sentence could be legally imposed.[6]

Unlike a statute, the career offender provision is one part of a series of guidelines meant to <u>guide</u> the district court to the proper sentence. District courts are free to vary from the career-offender-based sentencing range, and we have affirmed their decisions to do so. See, e.g., <u>United States v. Moreland</u>, 437 F.3d 424, 436 (4th Cir. 2006), overruling on other grounds recognized by <u>United States v. Diosdado–Star</u>, 630 F.3d 359 (4th Cir. 2011) ("The district court here determined that sentencing Moreland as a career offender would not comport with the goals of § 3553(a), and we cannot reject this conclusion as unreasonable."). We have also upheld significant variances by district courts that were supported by their reliance on the § 3553(a) factors. See, e.g., <u>United States v. Smallwood</u>, 525 F. App'x 239, 241 (4th Cir. 2013) (affirming sentence 333 months above the top of the Guidelines range where the district court

---

[6] Indeed, at Appellant's <u>Kimbrough</u> re-sentencing, when given a chance to vary downward based on the crack/powder disparity, the district court declined to do so, sentencing Appellant to the same 262-month sentence based on the § 3553(a) factors, including his extensive criminal history.

26

"discussed the § 3553(a) factors, first listing each factor and then explaining how that factor related to [the defendant]'s case").

On this point, amicus and Appellant rely heavily on the Supreme Court's decision in United States v. Peugh, 133 S. Ct. 2072 (2013). As explained above, Peugh held that the ex post facto clause is violated when a defendant is sentenced under current Guidelines providing a higher sentencing range than the Guidelines in effect at the time of the offense. The Court explained, "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing. A retrospective increase in the Guidelines range applicable to a defendant creates a sufficient risk of a higher sentence to constitute an ex post facto violation." Id. at 2084 (emphasis supplied). But we know of no case where a "sufficient risk" of prejudice or harm has risen to the level of a "fundamental defect" resulting in a "complete miscarriage of justice." To do so would impermissibly water down standards meant to be "narrow" and "rare." Schlup, 513 U.S. at 299, 321. We thus decline to give Peugh the weight Appellant attributes to it.

C.

Third, we are not persuaded that Appellant's career offender designation is a defect of a "fundamental" nature. Courts have not used the term "fundamental" lightly. See

27

Arizona v. Fulminante, 499 U.S. 279, 310 (1991) (holding that a constitutional error renders a criminal punishment "fundamentally [un]fair" if it deprives defendant of the "basic protections [without which] a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence" (internal quotation marks omitted)); United States v. Ramirez-Castillo, 748 F.3d 205, 217 (4th Cir. 2014) ("The Sixth Amendment's jury trial guarantee, which includes, 'as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of guilty,' is fundamental." (quoting Sullivan v. Louisiana, 508 U.S. 275, 277 (1993))).

The language of § 2255(a) demonstrates that collateral review is available for defects of a constitutional magnitude and other defects that are equally fundamental, such as sentences issued "in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). However, Booker "stripped [the Guidelines] of legal force" and made them advisory. United States v. Dean, 604 F.3d 169, 173 (4th Cir. 2010). Because of this lack of "legal force," we would be remiss to place an erroneous Guidelines classification under an advisory scheme in the same category as violation of a statute or constitutional provision. See also Spencer, 773 F.3d at 1141 ("[N]o fundamental defect occurs when a court erroneously sentences a prisoner as a career offender under advisory guidelines." (emphasis in original));

28

cf. <u>Mikalajunas</u>, 186 F.3d at 495 ("[T]he scope of [collateral] review of non-constitutional error is more limited than that of constitutional error.").

Amicus hints that because the career offender enhancement was the result of a congressional directive, it should be entitled to more weight than a mere Guidelines provision crafted by the Sentencing Commission. <u>See</u> Amicus Br. 18. This argument is unfounded and was soundly rejected in <u>Spencer</u>, wherein the court stated, "Spencer's argument fails to appreciate the advisory nature of every provision of the guidelines. Although Congress directed the Sentencing Commission to create a guideline for career offenders, a district judge cannot treat that guideline as mandatory." <u>Spencer</u>, 773 F.3d at 1141. Therefore, because there is no dispute that Appellant's sentence did not exceed the statutory maximum, his erroneous classification does not rise to the level of a "fundamental" defect.

D.

Finally, when it comes to errors in application of the Guidelines, it is hard to fathom what the dividing line would be between a fundamental defect and mere error, and Appellant does not offer a workable one. Appellant first contends that a career offender designation "involves much more than a technical Guidelines error, but, considering the vastly-increased

29

sentence[] resulting from the improper career offender designation, constitute[s] a 'miscarriage of justice' by any commonsense definition." Appellant's Br. 8-9. But to draw the line at career offender designations would be underinclusive. It is possible that a career offender may not receive as vast an increase as another defendant who, for example, simply received an erroneous Guidelines enhancement. Compare Sun Bear v. United States, 644 F.3d 700, 702 (8th Cir. 2011) (defendant's sentencing range was 292 to 365 months without career offender enhancement, and 360 to life with career offender enhancement; defendant was sentenced to 360 months), with Mikalajunas, 186 F.3d at 497 (Murnaghan, J., dissenting) (defendant's sentence was increased by more than four years based on incorrect physical restraint enhancement). Appellant does not demarcate how vast a "vastly-increased sentence" must be to rise to the level of a miscarriage of justice.

On the other hand, to draw the line at any sentencing error that increases the sentencing range of the defendant would be overinclusive. It would not only fly in the face of our circuit precedent, see Mikalajunas, 186 F.3d at 496 ("[E]rrors of guideline interpretation or application ordinarily fall short of a miscarriage of justice"), but it would deal a wide-ranging blow to the judicial system's interest in finality, see United States v. Addonizio, 442 U.S. 178, 184 (1979) ("It has, of

course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment. The reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system of justice." (footnotes omitted)).

E.

For all of these reasons, we believe this case falls closer on the spectrum to Addonizio than Davis. Here, the district court sentenced Appellant "within the statutory limits," and while the career offender designation may have affected the ultimate sentence imposed, "it did not affect the lawfulness of the [sentence] itself -- then or now." Addonizio 442 U.S. at 187. Therefore, we are simply not presented with "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Hill v. United States, 368 U.S. 424, 428 (1962).

Our decision today does not come without frustration. Appellant challenged his career offender designation at every step, met all applicable deadlines (which was not the case in Whiteside and myriad decisions across the country), and his career offender designation increased dramatically his advisory Guidelines range. But we believe the guidance of the Supreme

31

Court and Congress is clear and, in this situation, ties our hands.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.