**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 23-6447**

_____

ALAN LANE HICKS,

> Petitioner – Appellant,

v.

JONATHAN FRAME, Superintendent,

> Respondent – Appellee.

_____

Appeal from the United States District Court for the Southern District of West Virginia, at Huntington.  Robert C. Chambers, United States District Judge.  (3:21-cv-00618)

_____

Argued:  March 19, 2025                                Decided:  July 23, 2025

_____

Before THACKER, RICHARDSON, and RUSHING, Circuit Judges

_____

Affirmed by published opinion.  Judge Richardson wrote the opinion, in which Judge Thacker and Judge Rushing joined.

_____

**ARGUED:**  Lawson Sadler, WASHINGTON UNIVERSITY SCHOOL OF LAW, St. Louis, Missouri, for Appellant.  Caleb Allen Seckman, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Appellee.  **ON BRIEF:** Steven J. Alagna, Supervising Attorney, Andrew R. Hilty, Student Advocate, Hannah F. Keidan, Student Advocate, Shawn N. Podowski, Student Advocate, Appellate Clinic, WASHINGTON UNIVERSITY SCHOOL OF LAW, St. Louis, Missouri, for Appellant. John B. McCuskey, Attorney General, Michael R. Williams, Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Appellee.

RICHARDSON, Circuit Judge:

Alan Hicks was convicted of murder, conspiracy, and grand larceny in West Virginia in 1988. For his crimes, he was sentenced to life in prison without the possibility of parole. In 2021, Hicks filed a federal habeas petition in the Southern District of West Virginia, collaterally attacking the validity of his imprisonment. The district court dismissed his petition because Hicks had failed to exhaust his state remedies before filing in federal court. On appeal, Hicks contends that he should be excused from this statutory exhaustion requirement.

The story behind Hicks's failure to exhaust, however, begins long before his federal habeas petition in 2021. To understand the fight on appeal, we must retrace his steps along a Kafkaesque journey through West Virginia's state court system that starts in 1989, shortly after his conviction, and ends, for our purposes, more than thirty years later in 2025. Along the way, our journey passes by forgotten motions, improperly appointed judges, and inattentive counsel. At the end, however, we find that the statutory text of 28 U.S.C. § 2254 requires us to affirm the district court's dismissal. So we do.

## I.     Background

### A.     Offenses And Direct Review

In November 1986, Alan Hicks was indicted in West Virginia for murder in the first degree. In early 1988, charges were added for aggravated robbery and conspiracy to commit murder. In September 1988, he was convicted of first-degree murder, conspiracy to commit murder, and grand larceny. The state court then sentenced Hicks to life imprisonment.

2

On October 26, 1989, Hicks appealed to the Supreme Court of Appeals of West Virginia. He asserted that the trial court lacked jurisdiction over his conspiracy charge, that his due process rights were violated by the prosecutor making unsupported allegations in his opening statement, and that the judge's failure to instruct the jury on self-defense violated his fair trial rights. He lost his direct appeal in January 1990, and did not seek review by the Supreme Court of the United States.

## B.      Collateral Challenges

Since losing his direct appeal, Hicks has collaterally attacked his conviction in three ways. The subject of this appeal is his third and most recent attack: his November 2021 federal habeas petition, brought under 28 U.S.C. § 2254. We start there.

In the district court below, Hicks asserted that his 1988 trial was riddled with half a dozen errors and constitutional rights violations.[1] West Virginia moved to dismiss Hicks's claim by arguing that he failed to exhaust state remedies before bringing his federal habeas petition. *See* § 2254(b)(1)(A). Hicks admitted that he had failed to exhaust but countered that he was nevertheless permitted to bring his federal petition because of § 2254(b)(1)(B), which excuses a petitioner from satisfying the exhaustion requirement if "there is an absence of available State corrective process" or if "circumstances exist that render such process ineffective to protect the rights of the applicant." The district court sided with West Virginia and dismissed the petition. At the same time, the district court granted Hicks

---

[1] The errors alleged are not relevant to this appeal but include a violation of the Double Jeopardy Clause, failure to grant a mistrial, failure to instruct the jury on self-defense, giving an improper malice instruction, failure to give a proper verdict forms to the jury, and the absence of trial advocacy from his counsel.

3

a certificate of appealability under 28 U.S.C. § 2253, and Hicks appealed the dismissal decision. It is this appeal that is before us now.

But to understand Hicks's contention on appeal that the district court erred by not excusing him from the statutory exhaustion requirement, we must take a detour to understand the "circumstances" that he alleges have "render[ed]" West Virginia's state postconviction proceedings "ineffective" to protect him. § 2254(b)(1)(B)(ii). This requires us to go over three decades back in time and explain Hicks's earlier two collateral attacks on his conviction in state court.

Hicks's first collateral attack began in February 1989, shortly after his conviction, when Hicks moved for a reduced sentence under Rule 35 of the West Virginia Rules of Criminal Procedure. W. Va. R. Crim P. 35. Rule 35(a) allows a West Virginia court to "correct an illegal sentence at any time," and Rule 35(b) allows a sentence reduction "within 120 days after the sentence is imposed . . . or within 120 days after the entry of mandate by the supreme court of appeals." Hicks did not specify which section he was moving under. But rather than seeking clarification, ruling on the motion, or any number of options, the West Virginia trial court did nothing.

After eight years passed by without movement on Hicks's motion for a sentence reduction, he launched his second attack. In November 1997, Hicks petitioned for postconviction relief and moved to appoint counsel in state court.[2] Instead of moving things along though, this only triggered a cascade of errors from all involved.

---

[2] Hicks's claims for state postconviction relief were largely similar to the claims he later brought in his federal habeas petition.

To start, Hicks's petition and motion were assigned to Judge O.C. Spaulding. The problem? Judge Spaulding had been the prosecutor in Hicks's trial nearly a decade prior. In fact, he had been the "Prosecuting Attorney" in Hicks's case and delivered the opening argument. In other words, the judge that West Virginia assigned to decide whether Hicks's trial had been infected by constitutional errors was one of the main individuals accused of making those errors. Subsequently, for reasons we can only speculate about, "no activity occurred [on Hicks's petition and motion] for fifteen (15) years." J.A. 433. Hicks also took no steps to force the court to act during that period.

Sometime during those fifteen years, and again for unknown reasons, the case was reassigned from Judge Spaulding to Judge J. Robert Leslie. In 2012, Hicks sent a letter to the court to renew his then-15-year-old motion to appoint counsel. In response, Judge Leslie appointed Shawn Bayliss to be Hicks's lawyer in September of that year. Hicks sent several letters to Bayliss from prison discussing his postconviction petition and his earlier motion for a sentence reduction. But while Bayliss attempted to secure a copy of Hicks's trial transcript and moved to extend filing deadlines several times, he neglected to respond to Hicks's communications. As a result, Hicks filed a complaint with the State Bar and the West Virginia Supreme Court concerning Bayliss's performance. Ultimately, citing struggles to obtain a copy of the transcript, Bayliss moved to be relieved as counsel a year after he was appointed. Judge Joseph Reeder—who took the case from Judge Phillip M. Stowers, who took the case from Judge Leslie—granted Bayliss's motion.

5

In September 2013, Judge Reeder appointed C. Dascoli, Jr. to replace Bayliss as Hicks's appointed counsel. From the record, Dascoli does not appear to have made any filings or taken any action with respect to Hicks's case for nearly three years.

In May 2016, Judge Reeder appointed Duane Rosenlieb to replace Dascoli as Hicks's appointed counsel. Rosenlieb promptly failed to abide by a court order to file Hicks's amended state postconviction petition by June 21, 2016. His first communication to Hicks was in November of that year, over half a year later.

In January 2017, Hicks tried to take matters into his own hands and moved to relieve Rosenlieb in order to proceed *pro se*. At a hearing, Rosenlieb informed the postconviction relief court that he was having trouble obtaining Hicks's trial transcript—the same difficulty Bayliss had encountered.[3] Rosenlieb also claimed that Hicks was himself an obstacle in the way of moving his postconviction petition forward because Hicks refused to fill out a so-called *Losh* list, a tool used in West Virginia to delineate the grounds for postconviction relief, and rejected Rosenlieb's proposed strategy to obtain relief. Judge Reeder relieved Rosenlieb of his duties but held Hicks's motion to proceed *pro se* in abeyance, reserving the right to appoint new counsel.

In May 2018, Hicks petitioned for a writ of mandamus in the West Virginia Supreme Court, asking that court to command Judge Reeder to resolve his Rule 35 motion for a sentence reduction and his postconviction petition, which remained pending after 29 and

---

[3] During the same hearing, Hicks claimed that he possessed a print version of the full transcript and agreed to make a copy of it on the condition that the court waive his copying fees.

6

21 years, respectively. The West Virginia Supreme Court responded in January 2019 by requiring Judge Reeder to show cause why the writ should not issue. In his response to the West Virginia Supreme Court's request to show cause, Judge Reeder finally ruled on Hicks's Rule 35 motion by, ironically, denying it on the grounds that it was filed a single day late back in 1989. As for Hicks's postconviction relief petition, Judge Reeder explained that he had not acted because Hicks had been "unwilling or unable to cooperate" with his attorneys. J.A. 436. But Judge Reeder stated that he had, just days prior, appointed one Carl Hostler to serve as Hicks's new counsel, so things were moving along.

In the same January 2019 order that appointed Hostler as counsel, Judge Reeder also scheduled a status hearing, set a final state-habeas petition deadline, and promised that the Court would "issue a final decision on the *Petition for Writ of Habeas Corpus Ad-Subjiciendum* on or before September 6, 2019." J.A. 530. None of these occurred. Only two and a half years later did the Court schedule another status hearing for Hicks's case—this time, for July 2022.

The July hearing was then rescheduled to August due to a scheduling conflict. The August hearing was then rescheduled to September due to a scheduling conflict. At the September 2022 status hearing, Hicks learned for the first time that Hostler had left private practice entirely and was no longer his attorney. Hicks was thus assigned yet another attorney—the fifth, for those counting—Jason Gain.

Between the appointment of Hostler in 2019 and the appointment of Gain in 2022, Hicks filed his federal habeas petition in the district court below. That brings us full circle back to the present appeal. As stated above, the district court dismissed Hicks's federal

7

habeas petition for failure to exhaust, and he appealed that dismissal to this Court. When Hicks filed his opening brief in this case in December 2024, "[n]o further progress ha[d] been made" in resolving his state postconviction relief case. Op. Br. at 9.

This is ordinarily where a facts section would end, as we have reached the point where the appeal before us was docketed—but this is no ordinary case. Hicks's oral argument date before this court was set for March 19, 2025. Just before oral argument, West Virginia reassigned Hicks's state postconviction case from Judge Reeder to a new judge, Mark Sorsaia. But, incredibly, Judge Sorsaia had *also* been one of Hicks's prosecutors, just like Judge Spaulding. West Virginia 28(j) letter (March 12, 2025). So the case had to be reassigned yet again.

Shortly after oral argument, the state court finally resolved Hicks's nearly thirty-year-old postconviction petition "on the merits" by "summarily dismiss[ing]" the case. Hicks 28(j) letter (April 24, 2025). This determination was made by Judge Stowers, who—it apparently bears mentioning—did not previously prosecute Hicks. *Id.*

With the timeline laid out, we now turn to the legal issue in this case.

## II.    Discussion

To obtain federal habeas relief, a state prisoner must satisfy the statutory requirements of 28 U.S.C. § 2254. One of those requirements is for the petitioner to have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In other words, the state prisoner must first go through all available state postconviction proceedings. This requirement is one rooted in comity for state courts and "serves to minimize friction between our federal and state systems of justice by allowing the State an

8

initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981). The exhaustion requirement is excused, however, if either "there is an absence of available State corrective process," or if "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. §§ 2254(b)(1)(B)(i)–(ii).

On appeal, Hicks challenges the district court's dismissal of his federal habeas petition. He admits that he has not satisfied the requirement to exhaust under § 2254(b)(1)(A) but offers two arguments for why he is statutorily excused from doing so under § 2254(b)(1)(B). First, he contends that the state proceedings were tainted because Judge Spaulding had served as his prosecutor before presiding over the first 15 years of his postconviction relief proceedings, and that this structural error rendered the state corrective process "[un]available." *See* § 2254(b)(1)(B)(i). Second, he contends that West Virginia's multi-decade delay in adjudicating his 1997 petition for state postconviction relief shows that the state process is "ineffective to protect [his] rights." *See* § 2254(b)(1)(B)(ii).

We decline to address the first argument because it was not included in Hicks's certificate of appealability. We reject the second on account of late-breaking developments in Hicks's state postconviction proceedings. We therefore affirm the district court's dismissal.

### A. The Certificate Of Appealability Only Mentions Delay, Not Bias

To succeed in this appeal, Hicks must prove that he satisfies § 2254's statutory requirements. But we begin with a predicate issue: To appeal the district court's resolution of his § 2254 petition in the first place, Hicks needed to obtain a certificate of appealability

9

("COA") from a judge or court.[4] COAs are essentially permission slips to appeal, governed by their own statutory requirements in § 2253. Because of a defect in his COA, Hicks is limited to one of his two theories and cannot argue on appeal that the bias from Judge Spaulding excused his failure to exhaust.

There are three COA requirements. The first, § 2253(c)(1), simply states that a COA is required for a prisoner to take an appeal in a proceeding under §§ 2254 or 2255.[5] Without a COA, the court of appeals lacks jurisdiction to hear the prisoner's appeal. *See Thaler*, 565 U.S. at 142. The second requirement, § 2253(c)(2), sets forth the substantive standard that the prisoner must meet, mandating that a COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." The third requirement, § 2253(c)(3), obligates the judge or court who grants the COA to "indicate which specific issue or issues" show that denial.

It is the third requirement that bars Hicks's argument regarding Judge Spaulding's involvement. West Virginia has pointed out that the district court granted Hicks a COA on account of "the length of delay in Petitioner's state proceedings." J.A. 686. The state argues that this short explanation of the "specific issue" does not "indicate" a concern with

---

[4] We do not address the unraised question of whether a district court judge may grant a COA. *Compare* § 2253(c)(1), *with Gonzalez v. Thaler*, 565 U.S. 134, 143 n.5 (2012), *and* Fed. R. App. P. 22(b)(1).

[5] These two statutory provisions, §§ 2254 and 2255, govern prisoners who are in custody pursuant to a judgment from state or federal court, respectively. But in addition to being detained pursuant to the judgment of a court, individuals can also be detained in other ways, such as by executive detention in the hands of the military. Those individuals may petition for a writ of habeas corpus under § 2241, and the requirements laid out in § 2253 do not apply to them.

any potential bias that might taint Hicks's proceedings from his prior prosecutor's involvement. § 2253(c)(3). We agree. So while we do not condone the mismanagement that led to Hicks's case being *twice* assigned to judges who were his former prosecutors, we are "precluded from considering" arguments from Hicks that address issues outside of delay. *Lumumba v. Kiser*, 116 F.4th 269, 278 n.4 (4th Cir. 2024).[6]

**B.      West Virginia's Postconviction System Is Not Presently "Ineffective"**

That leaves us with Hicks's second argument that the extremely long delay in his state postconviction proceeding renders it "ineffective to protect [his] rights." § 2254(b)(1)(B)(ii). Before we get to the merits of Hicks's claim, however, we must address another possible issue with Hicks's COA.

**1.      Hicks's COA does not indicate the constitutional right that is violated by delay, but we choose to address his delay argument anyway.**

The district court dismissed Hicks's habeas petition for failure to exhaust, which is a dismissal on procedural grounds. It then granted a COA, indicating that "the length of delay in the Petitioner's state proceedings" may permit him to excuse his failure. J.A. 686. Unlike the bias argument regarding Judge Spaulding, the COA identifies this issue. But

---

[6] Hicks also appears to have waived his bias argument by not raising it below. In his § 2254 petition to the district court, Hicks provided four grounds for habeas relief, none of which raised the theory that Judge Spaulding's involvement in his state postconviction proceeding excused the exhaustion requirement. Hicks's response to West Virginia's motion to dismiss his petition also failed to raise this theory. "When a party in a civil case"—which includes habeas cases, *see Smith v. Bennett*, 365 U.S. 708, 712 (1961)— "fails to raise an argument in the lower court and instead raises it for the first time before us, we may reverse only if the newly raised argument establishes 'fundamental error' or a denial of fundamental justice." *In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014). We do not find this standard met, even with West Virginia's admittedly derelict conduct.

this only identifies that the procedural dismissal was debatable—not that there was a possible denial of a constitutional right. And even when "the district court denies relief on procedural grounds, the petitioner seeking a COA must show . . . 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right,'" *Thaler*, 565 U.S. at 140–41 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)), and the COA must then "indicate which specific issue or issues" satisfy that showing. § 2253(c)(3).

Though this means Hicks's COA is defective as to his second argument too, the outcome is different from the first. The COA requirements in § 2253(c)(2) and (3) are "mandatory," but they are not "jurisdictional." *Cox v. Weber*, 102 F.4th 663, 673 (4th Cir. 2024) (quoting *Thaler*, 565 U.S. at 146). The "mandatory" piece means that "[i]f a party timely raises the COA's failure to indicate a constitutional issue, the court of appeals panel must address the defect." *Thaler*, 565 U.S. 146. This is why we are "precluded from considering" Hicks's bias argument—West Virginia timely objected in its brief. *Lumumba*, 116 F.4th at 278 n.4. But because the requirements are not "jurisdictional," we are not required to raise them on our own. *See Thaler*, 565 U.S. at 146; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (explaining what is required for jurisdictional defects). When a party does not object to a mandatory-but-nonjurisdictional defect, we are given discretion over whether we wish to address it. *See United States v. Foote*, 784 F.3d 931, 935 n.4 (4th Cir. 2015); *Wood v. Milyard*, 566 U.S. 463, 466 (2012) ("Our precedent establishes that a court may consider a statute of limitations or other threshold bar the State failed to raise in answering a habeas petition.").

12

West Virginia has not objected to this second defect in Hicks's COA concerning his delay argument. Though we have discretion to raise the defect ourselves, we decline to do so. Given West Virginia's failure to resolve Hicks's claim for such an extended duration, comity towards any interest it might have in being the first to answer Hicks's claim is unwarranted. *Cf. United States v. Oliver*, 878 F.3d 120, 127 (4th Cir. 2017). So "at this late stage, we will not treat this potential defect" as foreclosing Hicks's delay argument. *Foote*, 784 F.3d at 935 n.4.[7]

---

[7] This is not the only threshold defect in Hicks's petition that we choose not to consider—Hicks's habeas petition was also untimely when filed in the district court.

The statute of limitations—added by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")—gives a state petitioner one year after the conclusion of the petitioner's direct review process to file a federal habeas petition. 28 U.S.C. § 2244(d)(1). AEDPA, however, was passed on April 24, 1996—later than when Hicks's direct review process became final in 1990. For habeas petitioners whose direct review ended before the passage of AEDPA, their one-year timer starts on the date of AEDPA's passage. *Wood*, 566 U.S. at 468–69. So Hicks had until April 24, 1997, to file his federal habeas petition— over two decades before he actually filed. *Id.*

But this one-year deadline is tolled if the petitioner lodges "a properly filed application for State post-conviction or other collateral review." § 2244(d)(2). Here, two possible sources of tolling exist: Hicks's state postconviction relief application, and his Rule 35 motion for sentence reduction. *See Wall v. Kholi*, 562 U.S. 545, 555 (2011). Neither help Hicks. He filed his postconviction relief application on November 20, 1997, half a year after the limitations period had run. And though Hicks's motion for sentence reduction was filed long before the deadline in 1989, the West Virginia Supreme Court held that Hicks's motion was filed a day late as a matter of state law. *State v. Hicks*, 2020 WL 201222, at *4 (W. Va. Jan. 13, 2020). So the petition was not "properly filed." § 2244(d)(2); *see Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) ("[T]ime limits, no matter their form, are filing conditions." (quotation omitted)).

West Virginia moved below to dismiss Hicks's federal habeas petition based on the statute of limitations, but the district court denied the motion, finding that Hicks's Rule 35 motion was filed timely and thus tolled AEDPA's statute of limitations. This ruling contravened the conclusion of the West Virginia Supreme Court. But West Virginia has not raised any of this on appeal. And "[b]ecause the one-year statute of limitations is not jurisdictional, a federal habeas court is not duty-bound to consider the timeliness of a (Continued)

13

### 2. Whether a state's postconviction process is "ineffective" is a forward-looking question.

We finally turn to the merits of Hicks's delay argument. Hicks argues that the district court erred in dismissing his federal habeas petition for failing to satisfy the § 2254(b)(1)(A) exhaustion requirement. He asserts that he is excused from that requirement under § 2254(b)(1)(B)(ii) on account of West Viginia's nearly three-decade delay in resolving his state postconviction petition. We are sympathetic to Hicks's argument and understand that he has been trapped in a procedural morass, largely of West Virginia's making, for some time. But the plain text of the § 2254(b)(1)(B)(ii) exception requires that we affirm the district court. *See Valladares v. Ray*, 130 F.4th 74, 80–81 (4th Cir. 2025) ("Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." (quotation omitted)).

The key feature of the statutory text at issue for our purposes is its tense. "Consistent with normal usage, we . . . look[] to Congress' choice of verb tense to ascertain a statute's temporal reach." *Carr v. United States*, 560 U.S. 438, 448 (2010) (citations omitted). And "a statute's 'undeviating use of the present tense' [is] a 'striking indicator' of its 'prospective orientation.'" *Id.* at 449 (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake*

---

§ 2254 petition." *Hill v. Braxton*, 277 F.3d 701, 705 (4th Cir. 2002). Though we may have discretion to do so, we decline to for the same reasons we decline to consider the COA defect with Hicks's delay argument—no comity is warranted. *Cf. Oliver*, 878 F.3d at 127.

In declining to consider Hicks's untimely filing, however, we do not implicitly approve of the district court's denial of West Virginia's timeliness motion. It did so only by ignoring an express decision from the West Virginia Supreme Court issued in this case, on this question, and on a matter of state law. That is not how federal courts typically operate. *See Murdock v. City of Memphis*, 87 U.S. 590, 635 (1874); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 456 (1958).

14

*Bay Found., Inc.*, 484 U.S. 49, 59 (1987)) (cleaned up). A statutory provision that consistently employs the present tense thus takes account of events and occurrences now and in the future but "does not include the past." *Id.* at 448.

Section 2254(b)(1)(B)(ii) is written in the present tense. It excuses exhaustion if "circumstances exist that render such process ineffective to protect the rights of the applicant." The exception applies not when circumstances *existed* in the past, but when they "*exist*" now. *Id.* (emphasis added). Consistently, the other exhaustion exception is also written in the present tense, applying when there "*is* an absence of available State corrective process." § 2254(b)(1)(B)(i) (emphasis added). So Hicks is only excused from exhausting if it appears that West Virginia's postconviction process is *presently* ineffective to protect his rights, regardless of whether they were ineffective before.

Despite the decades of delay that have plagued Hicks's case, it no longer appears that West Virginia's post-conviction system is ineffective to protect Hicks's rights. After oral argument in this case had concluded, the parties informed us that West Virginia assigned Hicks's postconviction case to a judge who was uninvolved with his prosecution, and that the judge resolved the case on its merits. So after much prodding and way too much time, West Virginia is finally addressing Hicks's case. Hicks's postconviction petition—which alleges violations of his federal rights—must be evaluated fairly under West Virginia's postconviction laws. *See Williams v. Pennsylvania*, 579 U.S. 1, 13–14 (2016). That is now being done. And although Hicks so far "has been unable to obtain relief," that does not render its system ineffective to protect his rights. *See Farkas v.*

15

*Butner*, 972 F.3d 548, 555–56 (4th Cir. 2020).  And in any case, Hicks may still yet obtain relief on appeal in the state system.

To be sure, past ineffectiveness is not irrelevant in considering present ineffectiveness.  If it appeared that the underlying causes of West Virginia's delay between 1997 and 2025 continued to exist such that it was likely Hicks's case would again languish for years, our analysis would be different.  But we have no reason to think that such delay will happen again.  There is no indication that West Virginia's postconviction process is so generally dilatory that the average petitioner will suffer extreme delay.  Hicks's situation, as far as the record shows, is an outlier.  So now that there has been movement in Hicks's case, we expect it to proceed as the average petitioner's case does.  West Virginia has failed him in the past, but we are confident and hopeful that it will not continue to fail him moving forward.  Accordingly, the text of § 2254(b)(1)(B)(ii) does not permit Hicks to excuse his failure to exhaust.  *Cf. Bowles v. Russell*, 551 U.S. 205, 212–14 & n.4 (2007) (noting that even when liberty is on the line, textual strictures must be adhered to).[8]

Our conclusion that past delay alone is insufficient to excuse exhaustion aligns with longstanding habeas precedent and history.  "The exhaustion doctrine existed long before its codification."  *Rose v. Lundy*, 455 U.S. 509, 515 (1982).  It was crafted "as a matter of

---

[8] Absent West Virginia's last-minute action, many hard questions would abound. For now, we leave unresolved the extent to which considerations like length of delay, blame for delay, and diligence by the petitioner in pursuing his rights factor into whether the exhaustion requirement has been excused. *See Morton v. Dir. Virgin Islands Bureau of Corr.*, 110 F.4th 595, 601 (3d Cir. 2024) (exploring these questions); *Johnson v. Bauman*, 27 F.4th 384, 391 (6th Cir. 2022) (same); *Evans v. Wills*, 66 F.4th 681, 682 (7th Cir. 2023) (same); *Welch v. Lund*, 616 F.3d 756, 760 (8th Cir. 2010) (same).

comity" to "the state[s]." *Id.* "[F]irst announced in *Ex parte Royall*, 117 U.S. 241 (1886)," the doctrine "is now codified" in AEDPA. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). But after codification, the Supreme Court has continued to look to pre-AEDPA common-law applications of the doctrine to resolve modern-day cases. *See, e.g., id.* at 844–45; *Slack*, 529 U.S. at 486; *Rhines v. Weber*, 544 U.S. 269, 276–77 (2005); *Davila v. Davis*, 582 U.S. 521, 527 (2017). But throughout all this history, one fact is striking: before and after AEDPA "no federal court . . . [has] ever excused a state prisoner's failure to exhaust merely due to delay in state court proceedings." *Bauman*, 27 F.4th at 391. Instead, even after delay, a petitioner has needed to prove that further efforts in state court would be "futile in the face of state dilatoriness or recalcitrance." *Farmer v. Cir. Ct. of Maryland for Baltimore Cnty.*, 31 F.3d 219, 223 (4th Cir. 1994).[9] It is thus no surprise that AEDPA follows this historical throughline.

Hicks has shown past delay—decades of it—in his state postconviction proceeding. What he cannot show, however, is that the state process is presently ineffective. West Virginia's postconviction relief system is now making progress on Hicks's case with no sign of future difficulties. So Hicks cannot excuse his failure to exhaust his state remedies under § 2254(b)(1)(B)(ii).

---

[9] The Supreme Court has also excused exhaustion where "a state prisoner's detention impaired the federal government's operations," where "a state prisoner's detention impeded the administration of justice in federal tribunals," and where "a state prisoner's continued detention was detrimental to the federal government's relationship with a foreign nation." *Bauman*, 27 F.4th 384 at 390. But these are unrelated to delay.

17

\*          \*          \*

West Virginia gets no credit for its narrow victory today. Its past treatment of Hicks no doubt offends basic notions of how a state should treat its prisoners. The Anglo-American legal tradition has for centuries recognized the importance of expedient justice: "To no one will we sell, to none will we deny *or delay*, right or justice." Magna Carta ch. 40 (1215) (emphasis added). That recognition has not faded over time. We still understand today that "justice too long delayed is justice denied." Martin Luther King, Jr., *Letter from Birmingham Jail* (Apr. 16, 1963).

Hicks is not necessarily entitled to freedom. But if he is to walk free at the end of his state postconviction proceedings, his freedom should not suffer from further undue delay. If he is to stay in prison, he is nevertheless entitled to know that forthwith.

*AFFIRMED*