**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-6280

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

   v.

BOBBY JUNIOR VENABLE,

        Defendant – Appellant.

Appeal from the United States District Court for the Western District of Virginia, at Danville. Jackson L. Kiser, Senior District Judge. (4:97-cr-70070-JLK-1)

Argued: October 30, 2019                      Decided: November 20, 2019

Before AGEE, THACKER, and QUATTLEBAUM, Circuit Judges.

Vacated and remanded by published opinion. Judge Agee wrote the opinion, in which Judge Thacker and Judge Quattlebaum joined.

**ARGUED:** Lisa M. Lorish, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant. Jennifer R. Bockhorst, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee. **ON BRIEF:** Juval O. Scott, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellant. Thomas T. Cullen, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

AGEE, Circuit Judge:

Bobby Junior Venable appeals from the district court's summary denial of his motion to reduce his sentence under 18 U.S.C. § 3582(c)(1)(B), as authorized by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). The district court held that the First Step Act did not authorize a reduction in Venable's sentence because he had completed his original term of imprisonment and was currently in custody following revocation of supervised release. For the reasons set out below, we conclude that the district court erred in determining Venable was statutorily ineligible for a sentence reduction under the First Step Act. Therefore, we vacate the judgment denying Venable's motion and remand to the district court to consider that motion on the merits in the first instance.

I.

A.

The statutory framework for this case involves the intersection of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010), and the First Step Act. The Fair Sentencing Act reduced the penalties for specific cocaine-related offenses punishable under 21 U.S.C. § 841(b)(1)(A) and (b)(1)(B) by increasing the amount of cocaine base required to trigger certain statutory penalties. In relevant part, Section 2 of the Fair Sentencing Act increased from 5 grams to 28 grams the quantity of cocaine base required to trigger the statutory penalties for a Class B felony set forth in 21 U.S.C. § 841(b)(1)(B). This change also meant that an offense for less than 28 grams would thereafter be classified as a Class C felony and subject to lower statutory penalties.

2

In late 2018, Congress enacted and the President signed into law the First Step Act, with the purpose of modifying prior sentencing law and expanding vocational training, early-release programs, and other initiatives designed to reduce recidivism. *See, e.g.*, John Wagner, *Trump Signs Bipartisan Criminal Justice Bill Amid Partisan Rancor over Stopgap Spending Measure*, Washington Post, Dec. 21, 2018. In particular, Section 404 of the First Step Act allows previously sentenced defendants to file a motion requesting the sentencing court to "impose a reduced sentence as if [S]ections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." Pub. L. 115-391, § 404; 132 Stat. 5194, 5222 (2018).[1][2] A "covered offense" is defined in the First Step Act as "a violation of a Federal criminal statute, the statutory penalties for which were modified by [S]ection 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." *Id.*

B.

In 1997, Venable pleaded guilty to possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a) (Count One), and possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) (Count Two). Venable stipulated that his applicable drug weight for Count One was 12.1 grams of cocaine base. This quantity of drugs was classified as a Class B felony under then-applicable law, which

---

[1] Section 3 of the 2010 Fair Sentencing Act eliminates the mandatory minimum sentences imposed for simple possession under 21 U.S.C. § 844(a) and is not relevant to Venable's appeal.

[2] We have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

provided for a statutory minimum term of imprisonment of 5 years and a maximum term of 40 years' imprisonment.[3] The district court sentenced Venable to 110 months' imprisonment on each count, to be served concurrently. Venable also received four years of supervised release on Count One and three years on Count Two, also to be served concurrently.

In March 2008, under 18 U.S.C. § § 3582(c)(2), the district court reduced Venable's sentence to 92 months' imprisonment or time served, whichever was longer, consistent with Amendment 706 to the United States Sentencing Guidelines.[4] Because Venable had already served more than 92 months' imprisonment, he was released from custody and began serving his four-year term of supervised release, which had not been changed.

In 2010, while on supervised release, Venable was arrested on new state charges for two counts of possession with intent to distribute oxycodone and one count of possession with intent to distribute morphine. Thereafter, the United States Probation Office filed a petition to revoke Venable's supervised release, representing that the state offenses were a violation of its terms. Because Venable's federal drug conviction was classified as a Class B felony at the time, his statutory maximum term of imprisonment for the supervised release violation was 3 years. *See* 18 U.S.C. § 3583(e)(3). The district court sentenced

---

[3] Because the district court sentenced Venable on January 29, 1998, before *United States v. Booker*, 543 U.S. 220 (2005), Venable's offense resulted in a mandatory United States Sentencing Guidelines range of 110 to 137 months' imprisonment, corresponding to a range mandated by statute.

[4] Amendment 706 retroactively altered the Sentencing Guidelines applicable to criminal cases involving crack cocaine or cocaine base effective March 3, 2008. *See* U.S.S.G. § 1B1.10(c), (d) (Mar. 3, 2008).

Venable to 15 months' incarceration, to run consecutively to Venable's 10-year state sentence on the state drug convictions. He was not sentenced to any additional period of supervised release. Having completed his state sentence, Venable is currently serving his revocation sentence in the custody of the federal Bureau of Prisons (the "BOP").[5]

In early 2019, Venable filed a motion for a sentence reduction based on Section 404 of the First Step Act. He asserted that, read together, Section 404 of the First Step Act and Section 2 of the Fair Sentencing Act reduced the statutory penalties applicable to his prior federal drug offense. Specifically, Venable claimed that he would no longer face a statutory minimum term of imprisonment and would instead only be subject to a 20-year statutory maximum term. Venable then asked the district court to resentence him to 63 months' imprisonment for his original federal drug conviction. He claimed this sentence would allow the BOP to credit him for overserved time, to be applied to his current term of imprisonment for revocation of supervised release. He asserted that after the various calculations were made, it would result in a sentence of time served and that he would be entitled to immediate release.

The district court summarily denied Venable's motion. In the "additional comments" section of a form order, the district court stated that "[d]efendant has finished his term of incarceration and is currently in custody following revocation of his supervised release. No reduction is authorized." J.A. 25.

---

[5] According to the BOP inmate locator function on its website, Venable's projected release date is December 15, 2019.

Venable noted a timely appeal, and the Court has jurisdiction under 28 U.S.C. § 1291.

## II.

### A.

On appeal, Venable asserts that the district court had the authority to reduce either his original sentence or his revocation sentence (or both) under the First Step Act. Citing Fourth Circuit precedent adopting the "unitary" theory of sentencing, Venable argues that his revocation sentence is part of his original sentence for the federal drug conviction to which the First Step Act's provisions apply. He further asserts that his revocation sentence must be considered part of his original sentence because he did not violate a new criminal statute, nor did he have a new trial; rather, he violated the terms and conditions of his original criminal judgment under 21 U.S.C. § 841(a).

In addition, Venable contends that because the Fair Sentencing Act reduced the statutorily authorized sentences for both the terms of imprisonment and terms of supervised release, those changes necessarily had an effect on the entire sentence a defendant may serve. This includes the term of imprisonment or supervised release authorized for defendants whose initial term of supervised release has been revoked. For example, he points out that under the Fair Sentencing Act, his original federal drug conviction would now be classified as a Class C, rather than a Class B, felony. The effect of this reclassification not only reduces the original statutory penalties for the term of imprisonment for the drug conviction, but also shortens the maximum revocation sentence

6

for a violation of supervised release from three years (authorized for Class B felonies) to two years (authorized for Class C felonies).

Consequently, Venable contends the district court is authorized to change his revocation sentence as a result of these statutory amendments under the First Step Act and Fair Sentencing Act. At bottom, Venable argues that because his revocation sentence was part of a unitary sentence, the district court had the authority to reduce either his original term of imprisonment and supervised release or the revocation term of imprisonment and supervised release. As such, he contends the district court erred in concluding it lacked that authority.

In its brief to this Court, the Government disagreed with Venable and posited that revocation sentences are separate offenses unaffected by the First Step Act. Under this position, Venable's current revocation incarceration would stem not from the original criminal statutes under which he was convicted, but rather from 18 U.S.C. § 3583(e)(3), which does not fall under the First Step Act as a "covered offense." The Government further argued on brief that even if the district court erred in stating that it had no authority to reduce Venable's sentence, such an error was harmless as a matter of law. Conceding that normally a mistaken ruling on the scope of a court's legal authority would constitute reversible error, the Government nonetheless contended that the Court should deem any error harmless as a matter of law given the serious policy concerns supporting the denial of Venable's motion. In particular, the Government asserted that it would be bad policy to allow a defendant to challenge a completed sentence in order to "bank" time that would be used to off-set a later offense.

7

The day before oral argument, however, the Government filed a letter with the Court stating (1) that its brief incorrectly argued that the First Step Act did not authorize resentencing for defendants serving revocation sentences, and (2) identifying a new argument as a basis to deny Venable relief.

Abandoning a major part of its original argument on brief, the Government now agrees with Venable that a district court has the authority to reduce a term of imprisonment imposed upon revocation of supervised release if the defendant was originally sentenced for a "covered offense" as defined in Section 404(a) of the First Step Act. Notwithstanding this concession, the Government continues to assert that the district court correctly held that it lacked the authority to reduce Venable's original, completed term of imprisonment.

In addition to its foregoing confession of error, the Government's letter also now asserts "a critical omission from its brief" related to the standard of review. Oct. 29, 2019 Gov't Ltr. at 2. On brief, the Government had agreed with Venable that de novo review was appropriate for the issue presented in this case. In its last-minute letter, however, the Government now asserts that it had failed to distinguish among Venable's arguments relating to the court's authority to change his revocation sentence and that Venable's request should be reviewed for plain error and not de novo. Specifically, the Government posits that Venable requested in the district court only that his *original* sentence be reduced and the resulting banked time be used to offset his subsequent revocation sentence, as opposed to his appellate argument that his revocation sentence could be reduced on its own. The Government concludes that because Venable argued for the first time on appeal that

the revocation sentence itself may be reduced, that issue was subject to plain-error review.[6]

Further, the Government now argues that Venable is not entitled to relief under plain-error review because "[a]ny error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings" given that a revocation sentence is imposed for violation of the court's trust as opposed to furthering the Fair Sentencing Act and First Step Act's policy objectives related to crack cocaine offenses. *Id.* at 4.

B.

Our case law is clear that "parties cannot waive the proper standard of review by failing to argue it" or by consenting to an incorrect standard. *Sierra Club v. U. S. Dep't of the Interior*, 899 F.3d 260, 286 (4th Cir. 2018). But in *United States v. Ashford*, 718 F.3d 377 (4th Cir. 2013), the Court declined to apply plain-error review when faced with a similar "eleventh-hour request" by the government raising the defendant's purported waiver in a letter submitted "days" before oral argument. *Id.* at 380 ("We decline this eleventh-hour request to review [the defendant's] claim for plain error, as the government itself failed to raise any such argument in its opening brief."). As we recognized in that case, "[r]egardless of whether a party may truly 'waive waiver,' we [may] exercise our

---

[6] To prevail on plain-error review, a defendant must first establish that an error occurred in the proceedings below. *United States v. Hughes*, 401 F.3d 540, 547 (4th Cir. 2005). If so, the Court then determines whether the error was "plain," meaning "clear" or "obvious." *Id.* "An error is plain where the law at the time of trial was settled and clearly contrary to the law at the time of the appeal." *Id.* If the Court determines the error was indeed plain, the defendant must still establish that the error "affected his substantial rights, *i.e.*, that it was prejudicial." *Id.* at 548. The Court will reverse on plain-error review only if failing to do so would "result in a miscarriage of justice." *Id.* at 555.

9

discretion . . . to excuse any supposed waiver" by Venable. *Id.* at 380. This is because such a "procedural ambush" by the Government is not authorized by the Federal Rules of Appellate Procedure,[7] prevented Venable "from contesting the [G]overnment's waiver argument," and generally runs counter to the interests of fairness. *Id.* at 381. Given that the Government's letter constitutes the same sort of "procedural ambush" described in *Ashford*, which raises a wholly new (and nonjurisdictional) argument, we decline the Government's request to consider Venable's appeal under plain-error review for the same reasons we declined to apply plain-error review in *Ashford*.[8] Consequently, we review the district court's denial of Venable's motion de novo.

## C.

Our merits analysis reflects the Government was correct to recognize that the district court erred in concluding the First Step Act did not authorize it to consider Venable's

---

[7] The Government conceded at oral argument that it had not filed its letter under Federal Rule of Appellate Procedure 28(j) because it did not properly fall under that Rule's scope, which permits the filing of "pertinent and significant *authorities* [that] come to a party's attention" after briefing or oral argument. Fed. R. App. P. 28(j) (emphasis added); *see also Hensley ex rel. North Carolina v. Price*, 876 F.3d 573, 580 n.5 (4th Cir. 2017) (admonishing that 28(j) letters are not an appropriate means of advancing or preserving arguments not raised in briefs); *Alvarez v. Lynch*, 828 F.3d 288, 295 n.7 (4th Cir. 2016) ("We have made crystal clear we do not countenance a litigant's use of Rule 28(j) as a means to advance new arguments couched as supplemental authorities."). While a party may confess error at any time, the Government did not rely on—nor could it point the Court to—any authority providing it with the right to file a letter asserting a new argument on the day before oral argument.

[8] The Government contends that we should instead apply the general rule expressed in *Sierra Club*. But *Sierra Club* did not present the issue of whether a party may belatedly assert a waiver-based argument that would result in the Court using plain-error review. Instead, it involved the preserved issue of what standard of review to apply to question presented in the case.

motion for relief because he was serving a term of imprisonment for revocation of supervised release. Although this is an issue of first impression for the Court—to date, *no court of appeals has addressed the issue*—our conclusion flows directly from the plain language of the relevant statutes and the unitary theory of sentencing.[9]

Venable's original drug conviction under 21 U.S.C. § 841(a) falls within the First Step Act's definition of "covered offense," meaning that so long as he is serving any part of his sentence for that offense, he is eligible for a reduction. His offense (possession of 12.1 grams of cocaine base) was originally classified as a Class B felony, but under the Fair Sentencing Act's provisions, it is now classified as a Class C felony. This reclassification corresponds with a lower range of statutory penalties.

If Venable were serving his original term of imprisonment, there would be no question that the First Step Act's provisions apply and the district court would have the authority to resentence him. The First Step Act is silent, however, as to whether and when a court may consider a motion for resentencing brought by a defendant who has completed his initial custodial sentence and is serving either a term of supervised release or a term of imprisonment imposed for violation of the terms of his supervised release. To resolve that question, we review our case law concerning the unitary framework of sentencing.

---

[9] A majority of district courts faced with a similar issue have found that defendants who would otherwise be eligible for a sentence reduction remain eligible for relief notwithstanding their subsequent imprisonment upon a revocation of supervised release. *See, e.g.*, *United States v. Smith*, No. 5:05-cr-30044, 2019 WL 3557886, at *3 (W.D. Va. Aug. 5, 2019); *United States v. Plumley*, No. 5:05-cr-00224-01, 2019 U.S. Dist. LEXIS 101361, at *3 (S.D. W. Va. June 18, 2019); *United States v. Wooters*, No. 09-cr-40013-JPG, 2019 WL 1897085, at *3 (S.D. Ill. Apr. 29, 2019).

The United States Supreme Court spoke directly to the question of whether a revocation sentence constitutes part of a defendant's original sentence in *Johnson v. United States*, 529 U.S. 694 (2000), which resolved a circuit split over whether revocation and reimprisonment should be considered "punishment for the original offense." *Id.* at 699. In *Johnson*, the defendant challenged an additional term of supervised release imposed after he served prison time for violating the terms of his first release. He argued that the district court no longer had the authority to impose another period of supervised release once it revoked his original sentence. *Id.* at 698. The Supreme Court disagreed, determining the district court's authority to "revoke" as a "recall," rather than a "termination," of the original sentence. *Id.* at 706, 712. In its most recent term, a plurality of the Supreme Court reaffirmed the relevant conclusion of *Johnson* in *United States v. Haymond*, 139 S. Ct. 2369, 2379–80 (2019) ("[W]e . . . acknowledge that an accused's final sentence includes any supervised release sentence he may receive. Nor in saying that do we say anything new: This Court has already recognized that supervised release punishments arise from and are treated . . . as part of the penalty for the initial offense.").

Following *Johnson*'s reasoning, we adopted a unitary sentence framework in *United States v. Ketter*, 908 F.3d 61, 65 (4th Cir. 2018), stating that "[t]reating custodial and supervised release terms as components of one unified sentence appropriately recognizes the interdependent relationship between incarceration and supervised release." But we had acknowledged this underlying understanding of how the components of a sentence operated for some time before *Ketter*. *E.g.*, *United States v. Evans*, 159 F.3d 908, 913 (4th Cir. 1998) ("[T]he term of supervised release, the revocation of that term, and any

12

additional term of imprisonment imposed for violating the terms of supervised release are all part of the original sentence."); *United States v. Woodrup*, 86 F.3d 359, 361 (4th Cir. 1996) ("The sentence imposed upon revocation of a term of supervised release is an authorized part of the original sentence, just as the term of supervised release is an authorized part of the original sentence[.]").

Applying the framework set out in *Johnson* and *Ketter* to this case, Venable's revocation sentence is a component of his underlying original sentence for the drug conviction. And given that Venable's revocation sentence is part of the penalty for his initial offense, he is still serving his sentence for a "covered offense" for purposes of the First Step Act. Thus, the district court had the authority to consider his motion for a sentence reduction, just as if he were still serving the original custodial sentence. To hold otherwise was error. Accordingly, we vacate the district court's judgment and remand to the district court to consider Venable's motion in the first instance.

We emphasize that our holding today is limited to the issue of a district court's *authority* to resentence a defendant serving a term of imprisonment for revocation of supervised release whose original, underlying conviction was for a "covered offense." We offer no opinion on whether Venable is entitled to a reduction of his revocation sentence. Nor do we offer any opinion on what, if any, effect the fact that Venable is serving a

sentence for revocation of supervised release should have on the district court's assessment of his motion.[10] [11]

## III.

For the reasons discussed above, we hold that the district court erred in concluding the First Step Act did not authorize it to provide relief to Venable because he had finished serving his original term of imprisonment and was currently serving a term of

---

[10] The parties do not dispute that the district court would have the discretion to refuse a reduction once it considers Venable's motion on the merits. *See* Br. of Appellant at 5; Br. of Appellee at 9. Indeed, district courts have frequently exercised their discretion to deny relief, citing any number of policy and case-specific reasons. *E.g.*, *United States v. Jelks*, No. 19-10830, 2019 WL 4466870, at *2 (11th Cir. Sept. 18, 2019) (per curiam); *United States v. Sellers*, 776 F. App'x 143 (4th Cir. 2019) (per curiam), *aff'g* 4:01-cr-00058-RBH-1 (D.S.C. Apr. 25, 2019) (text order).

[11] Notably, the First Step Act provides limited guidance as to the procedures the court should employ when considering a motion for a reduction. Section 404(b) merely provides that the district court "may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed," while Section 404(c) reiterates that district courts retain full discretion in granting or denying relief on the merits and additionally addresses motions made by defendants who had been previously afforded the relief provided for in "sections 2 and 3 of the Fair Sentencing Act" or denied relief under "this section" of the Fair Step Act "after a complete review of the motion on the merits." Pub. L. 115-391, § 404(c); 132 Stat. 5194, 5222 (2018).

At the outset, a sentencing modification authorized under the First Step Act occurs under 18 U.S.C. § 3582(c)(1)(B) rather than 18 U.S.C. § 3582(c)(2). *See United States v. Wirsing*, No. 19-6381, slip op. at 15–19 (4th Cir. Nov. 20, 2019). Admittedly, there is little case law addressing appropriate procedures for a court to follow when considering sentence modifications under 18 U.S.C. § 3582(c)(1)(B). But relying on the text of § 3582(c)(1)(B) authorizing district courts to "modify an imposed term of imprisonment *to the extent . . . permitted by statute*" (emphasis added), the Fifth Circuit recently observed that a district court should "plac[e] itself in the time frame of the original sentencing, altering the relevant legal landscape *only by the changes mandated by the 2010 Fair Sentencing Act*." *United States v. Hegwood*, 934 F.3d 414, 418 (5th Cir. 2019) (emphasis added).

14

imprisonment for revocation of supervised release. Therefore, we vacate the district court's judgment and remand for the court to consider in the first instance whether Venable is entitled to relief on the merits of his motion for a sentence reduction.

*VACATED AND REMANDED*