**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-7104

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BROOKS TYRONE CHAMBERS,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Martin K. Reidinger, District Judge. (3:03-cr-00131-MR-1)

Argued: January 28, 2020                                        Decided: April 23, 2020

Before FLOYD, HARRIS, and RUSHING, Circuit Judges.

Vacated and remanded by published opinion. Judge Floyd wrote the opinion in which Judge Harris joined. Judge Rushing wrote a separate dissenting opinion.

**ARGUED:** Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Anthony Martinez, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

FLOYD, Circuit Judge:

Erroneously sentenced as a career offender, Brooks Tyrone Chambers is currently serving an almost 22-year prison sentence on a pre-2010 crack-cocaine offense. In 2019, he moved to reduce his sentence to time served under the First Step Act. Because the First Step Act gives retroactive effect to sections 2 and 3 of the Fair Sentencing Act of 2010, his statutory minimum would drop from 20 years to 10 years. In his motion, he asked the district court to apply retroactive intervening case law, under which he would not be a career offender. Without the enhancement, Chambers's Guidelines range would also drop to 57 to 71 months; with it, his Guidelines range would remain the same—262 to 327 months.

The district court determined that Chambers was eligible for a sentence reduction under the First Step Act, but it proceeded to perpetuate the career-offender error when recalculating the Guidelines. Nor did it exercise its discretion to vary downward. Instead, the court denied Chambers's motion to reduce his custodial sentence, though it granted the motion as to his supervised release term. Because the First Step Act does not constrain courts from recognizing Guidelines errors, and because the district court seemingly believed that it could not vary from the Guidelines range to reflect post-sentencing information, we vacate the district court's resentencing order. Additionally, we now hold that any Guidelines error deemed retroactive, such as the error in this case, must be corrected in a First Step Act resentencing.

I.

In 2003, Chambers pleaded guilty to one count of conspiring to possess with intent to distribute 50 or more grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846. As part of the plea agreement, the parties stipulated that Chambers was responsible for more than 50 grams but less than 150 grams of crack-cocaine. Regarding the statutory sentencing range, the government initially filed an 18 U.S.C. § 851 notice of prior conviction of a felony drug offense, under which Chambers would have been sentenced to mandatory life imprisonment. But the government partially withdrew that notice, such that Chambers faced a statutory minimum of 20 years and a maximum of life imprisonment.

Chambers was not sentenced until June 2005. In its Presentence Report (PSR), the probation office designated Chambers as a career offender based on three prior state cocaine convictions. To be a career offender, Chambers must have been previously convicted of two "crime[s] of violence" or "controlled substance offense[s]." U.S.S.G. § 4B1.1(a). Pertinent here, offenses only qualify if they are "punishable by imprisonment for a term exceeding one year." *Id*. § 4B1.2(a)–(b). Chambers does not contest that his 1992 conviction for "Sell or Deliver Cocaine" qualified as a predicate felony. However, Chambers did not face more than a year in prison on his two other convictions: 1996 and 1997 convictions for "Felony Possession with Intent to Sell and Deliver Cocaine." Yet, because North Carolina's sentencing structure is tied to criminal history, some repeat offenders *could* have faced more than a year in prison on those same offenses. And, just a month before Chambers's sentencing, this Court decided *United States v. Harp*, in which we held that "we consider the maximum aggravated sentence that could be imposed for

3

that crime upon a defendant with the worst possible criminal history." 406 F.3d 242, 246 (4th Cir. 2005) (emphasis omitted). As a career offender under *Harp*, Chambers was subject to a Guidelines range of 262 to 327 months' imprisonment. The district court sentenced him at the low end to 262 months' imprisonment, and 10 months' supervision.

Therefore, Chambers was only sentenced as a career offender based on a "hypothetical enhancement" that he did not actually receive for either his 1996 or 1997 conviction. *See United States v. Simmons*, 649 F.3d 237, 243 (4th Cir. 2011). Sitting en banc, this Court later overturned *Harp* in *Simmons* and held that crimes are only punishable by a year or more as applied to the particular defendant, and not as applied to a hypothetical defendant. *See id.* at 249. The government does not dispute that Chambers would not have qualified as a career offender under *Simmons*. Moreover, we have already held that *Simmons* applies retroactively, meaning that the career-offender designation was just as much an error in 2005 as it was when we decided *Simmons* in 2011. *See Miller v. United States*, 735 F.3d 141, 146 (4th Cir. 2013).

Like many other First Step Act movants, Chambers was sentenced under a highly disparate sentencing scheme that "set the crack-to-powder mandatory minimum ratio at 100-to-1," disproportionately impacting African American defendants such as himself. *See Dorsey v. United States*, 567 U.S. 260, 268–69 (2012); *see also Kimbrough v. United States*, 552 U.S. 85, 98 (2007) ("Approximately 85 percent of defendants convicted of crack offenses in federal court are black; thus the severe sentences required by the 100–to–1 ratio are imposed 'primarily upon black offenders.'" (citation omitted)). In the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, Congress addressed the

4

crack-to-powder disparity by raising the quantity of cocaine base required to trigger enhanced penalties from 50 grams to 280 grams—more than stipulated in Chambers's plea agreement. *See* § 2. But Congress did not give this change retroactive effect until the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. *See* § 404(b). In doing so, it aimed to "allow prisoners sentenced before the Fair Sentencing Act . . . to petition the court for an individualized review of their case," and to bring such pre-2010 sentences "in line" with post-2010 sentences. Fact Sheet, Senate Comm. on the Judiciary, The First Step Act of 2018 (S.3649) – as Introduced (Nov. 15, 2018) (emphasis omitted).

Under the First Step Act, sentencing courts "that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." *See* § 404(b). There is no dispute that Chambers's 2003 conviction is a "covered offense," because his crime was "committed before August 3, 2010," and the "statutory penalties . . . were modified by section 2 or 3 of the Fair Sentencing Act of 2010." *See* § 404(a) (defining "covered offense"). Under section 2 of the Fair Sentencing Act, Chambers would face 10 years to life and a mandatory supervision term of 8 years, rather than 20 years to life and a mandatory supervision term of 10 years. However, if the career-offender guideline enhancement was not corrected, his Guidelines range would not change from 262 to 327 months.

Accordingly, in May 2019, after serving 179 months in prison, Chambers moved to reduce his sentence under the First Step Act to time served. First and foremost, he asked the district court to correctly calculate his Guidelines range without the career-offender

5

enhancement. In combination with the Fair Sentencing Act reforms, this calculation would result in a Guidelines range of 57 to 71 months—approximately one quarter of his erroneous career-offender range.[1] Second, if the district court declined to directly apply *Simmons* when recalculating the Guidelines range, Chambers asked that it vary downwards under the 18 U.S.C. § 3553(a) factors in recognition of the career-offender error. Specifically, he argued that varying downwards would avoid sentencing disparities, would approximate the seriousness of the offense and achieve § 3553(a)'s other objectives, and would reflect his good behavior and accomplishments in the Bureau of Prisons.

The district court held that Chambers was "eligible for a reduction," but denied him such a reduction as to his custodial sentence because Chambers would have received the same sentence under the Fair Sentencing Act, because he still would have faced a statutory maximum sentence of life imprisonment, and because the career-offender enhancement would still apply. *United States v. Chambers*, No. 3:03-CR-00131, 2019 WL 3072641, *2 (W.D.N.C. July 12, 2019). Although the court recognized that Chambers was eligible for a reduction of his custodial sentence, it declined to impose a reduced sentence here because it believed that it could not correct the erroneous career-offender designation, holding that "Section 404(b) of the First Step Act . . . does not authorize such a plenary resentencing." *Id*. Relatedly, it held that "Section 404(b) does not contemplate that the Court would apply all other legal authority that would have impacted the Defendant's sentence had he been

---

[1] This is true regardless of whether we look at the 2002 or 2019 Guidelines manual. Therefore, this case does not present the question of which manual applies in First Step Act cases.

sentenced today." *Id.*

Citing Chambers's "history and characteristics" and the "need for deterrence and to protect the public," the district court also declined to further reduce his sentence under the § 3553(a) factors. *Id.* at *3. In particular, the court found that Chambers's "offense was serious and involved the distribution of an enormous quantity of crack cocaine over a long period of time." *Id.* Moreover, the fact that he committed a fourth drug offense after being convicted of three such offenses "evidenc[ed] his refusal to abide by the law." *Id.* The court therefore denied Chambers's motion to the extent he requested a reduction in his term of imprisonment. It granted his motion in part, however, reducing his supervised release from 10 to 8 years, in accordance with the Fair Sentencing Act. *Id.* Chambers timely appealed.

## II.

Most fundamentally, Chambers contends that the district court misapprehended the scope of its authority under the First Step Act. In the context of a new statute, and with little guidance, district courts are being asked to shape what a resentencing under the First Step Act looks like. We review the scope of a district court's sentencing authority under the First Step Act de novo and provide further direction today. *See United States v. Wirsing*, 943 F.3d 175, 182 (4th Cir. 2019).

We start from a baseline rule of sentence finality. Generally, sentences may not be modified once imposed. *See* 18 U.S.C. § 3582(c). But there are several exceptions to this rule. One exception allows a district court to reduce a sentence based on a retroactive

7

Guidelines amendment. *See id.* § 3582(c)(2). The § 3582(c)(2) exception comes with many trappings: reductions must be "consistent with applicable policy statements issued by the Sentencing Commission," and, under policy statement U.S.S.G. § 1B1.10, courts are instructed to "substitute the amended Guidelines range 'while leav[ing] all other guideline application decisions unaffected.'" *See Dillon v. United States*, 560 U.S. 817, 821 (2010) (alteration in original) (quoting U.S.S.G. § 1B1.10). The court may then grant a reduced sentence "'after considering the factors set forth in [§] 3553(a) to the extent that they are applicable,'" but typically may not depart downward from the minimum of the amended Guidelines range. *See id.* (first quoting § 3582(c)(2); then citing U.S.S.G. § 1B1.10(b)(2)(A)). Accordingly, the Supreme Court has narrowly construed § 3582(c)(2) to provide only minimal relief based on Guidelines amendments and to preclude application of intervening case law. *See id.* at 824, 830–31 (holding that the district court lacked discretion under § 3582(c)(2) to correct *Booker*-related errors in petitioner's sentence).

First Step Act motions fall under § 3582(c)(1)(B), a distinct exception to finality. In sharp contrast to § 3582(c)(2), the § 3582(c)(1)(B) exception authorizes courts to "modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute." *See Wirsing*, 943 F.3d at 184–85 (quoting 18 U.S.C. § 3582(c)(1)(B)). As we recently explained in *Wirsing*, "there is no reason to suppose that motions brought pursuant to § 3582(c)(1)(B) are subject to the restrictions particular to § 3582(c)(2), which are grounded in the text of the latter statute." *See id.* at 185. Thus, applying § 3582(c)(1)(B), we look to the underlying statute to determine what it expressly provides. Here, that is the

8

First Step Act, and in particular, § 404(b).

Under § 404(b) of the First Step Act, sentencing courts may "impose a reduced sentence as if section 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." First Step Act § 404(b). The government contends that the "as if" clause limits the role of the sentencing court *only* to making statutory Fair Sentencing Act adjustments and precludes it from correcting Guidelines errors. To be sure, "as if" certainly directs the sentencing court to apply section 2 or 3 of the Fair Sentencing Act, and not some other section, or some other statute. In effect, it makes those sections of the Fair Sentencing Act retroactive.

But what of the Guidelines? Section 404(b) also expressly permits the court to "impose a reduced sentence." Not "modify" or "reduce," which might suggest a mechanical application of the Fair Sentencing Act, but "impose." *Cf.* 18 U.S.C. § 3582(c)(2) (as described in the title, providing only for a "modif[ication of] a term of imprisonment once it has been imposed," and using the verb "reduce" within that subsection).[2] And, when "imposing" a new sentence, a court does not simply adjust the

---

[2] Section 3582(c)(1)(B), by which First Step Act motions are brought, uses the term "modify" because it outlines an exception to the prohibition against "modify[ing] a term of imprisonment once it has been imposed." *See* 18 U.S.C. § 3582(c). The term "modify" can be harmonized with "impose" in § 404(b) of the First Step Act, because in § 3582(c), Congress was using "modification" in contradistinction to an already "imposed" sentence. That Congress expressly granted greater authority to "impose" a reduced sentence in § 404(b) is, in a literal sense, still a modification of a previously imposed sentence. Regardless, if we were to read the term "modify" in § 3582(c)(1)(B) to conflict with the term "impose" in § 404(b), the First Step Act would control because it is both more specific and later in date. *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153–55 (1976); (Continued)

9

statutory minimum; it must also recalculate the Guidelines range. *See Gall v. United States*, 522 U.S. 38, 49 (2007) ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). That is why the sentencing court in this case received a supplementary PSR, for example.

Additionally, and unlike under § 3582(c)(2) and its corresponding policy statement (U.S.S.G. § 1B1.10), there is no limiting language to preclude the court from applying intervening case law. The only express limitations arrive in § 404(c), which prevents the court from "entertain[ing] a motion" made by someone who filed a prior First Step Act motion that was denied on the merits, or whose sentence was already imposed or reduced in accordance with section 2 and 3 of the Fair Sentencing Act. *See* § 404(c).

Given the above, we are unpersuaded by the government's reliance on *United States v. Hegwood*, 934 F.3d 414 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 285 (2019). Like Chambers, the appellant in *Hegwood* was originally sentenced as a career offender, but that designation was deemed erroneous by intervening circuit precedent. *Id.* at 415–16. Eligible for resentencing under § 404(b), Hegwood's Guidelines range would have dropped drastically had the court corrected the error. *See id.* at 417. And, like the sentencing court here, the district court in *Hegwood* declined to apply intervening Fifth Circuit case law to remove the enhancement. *Id.* Applying the *expressio unius* canon of statutory construction, the Fifth Circuit stated that expression of the "as if" clause precludes

---

*see also* 2B Norman Singer & Shambie Singer, *Sutherland Statutory Construction* § 51:5 (7th ed. 2019).

10

any changes beyond those contained in sections 2 and 3 of the Fair Sentencing Act. *Id*. at 418. Because it found that the First Step Act does not "encompass a broad resentencing," it affirmed the district court's decision. *Id*. at 417, 419.

*Hegwood* is not persuasive for at least two reasons. First and foremost, unlike the *Simmons* error in this case, the intervening Fifth Circuit case law that would have removed Hegwood's career-offender enhancement has not been declared retroactive. *Hegwood* therefore does not squarely address the question presented here, because the error in that case may not have been a mistake at the time of the defendant's original sentencing.

Second, although Hegwood argued that the word "impose" requires recalculation of the Guidelines, the Fifth Circuit compared § 404(b) of the First Step Act to 18 U.S.C. § 3582(c)(2), the stricter mechanism by which prisoners modify sentences after Guidelines amendments. *See Hegwood*, 934 F.3d at 418. As discussed, it is true that the Supreme Court has interpreted § 3582(c)(2) to "authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *See id.* (quoting *Dillon*, 560 U.S. at 826). In *Dillon*, the Supreme Court rejected the petitioner's argument that the district court should have corrected mistakes in his original sentence because the court was "required to recalculate a defendant's sentence," and that mistakes are therefore "imposed anew if they are not corrected." 560 U.S. at 831. But recall that in *Wirsing*, this Court already explained why the strictures of § 3582(c)(2) are irrelevant to § 3582(c)(1)(B), under which First Step Act motions are brought. *See* 943 F.3d at 183–85; *see also United States v. Boulding*, 379 F. Supp. 3d 646, 654 (E.D. Mich. 2019) (noting that "the First Step Act does not impose any artificial or guideline limits on a reviewing court"). Instead, we

11

look to the First Step Act itself, which expressly allows a court to "impose" a reduced sentence, and not just to "reduce" it. *Cf.* 18 U.S.C. § 3582(c)(2).[3]

Importantly, § 404(b) of the First Step Act expressly allows a court to impose a reduced sentence in order to give retroactive effect to sections 2 and 3 of the Fair Sentencing Act. Chambers's case is a perfect example of the resulting absurdity if we construe the First Step Act to only allow a Fair Sentencing Act statutory modification and no more. By maintaining the Guidelines error here, the district court exercised its discretion to reduce a sentence that was, in its view, effectively irreducible. As we already noted in *Wirsing*, defendants sentenced as career offenders were "automatically excluded" from relief under Amendments 750 and 782, which retroactively lowered the relevant base offense levels after the Fair Sentencing Act. 943 F.3d at 179. It was "[a]gainst this background" that Congress enacted the First Step Act and attempted to fill such "gaps left by the Fair Sentencing Act." *Id.* It would pervert Congress's intent to maintain a career-offender designation that is as wrong today as it was in 2005, and under which Chambers is subject to a Guidelines range that is *four times* the correct range and that even at the low end is much greater than the new statutory minimum of 10 years.

---

[3] One other particularity of *Hegwood* is worth noting. There, Hegwood asserted a right under § 404(b) to a full or plenary resentencing, as if it were necessary to correct his career-offender error. Chambers does not request a plenary resentencing, and certainly does not need one to correct the *Simmons* error; the error is evident from the face of his PSR and the 1996 and 1997 North Carolina judgments. *See United States v. Black*, 388 F. Supp. 3d 682, 690 (E.D. Va. 2019) (recalculating a First Step Act movant's Guideline range without a career-offender error, and finding that doing so "requires only a review of the information contained in the presentence report and a mechanical modification based on application of the Guidelines," not a "*de novo* resentencing"); *see also United States v. Benjamin*, No. 3:09-CR-265, 2019 WL 5092246, at *3–6 (D. Conn. Oct. 11, 2019) (same).

12

III.

In disputing the foregoing conclusion, the government has adopted what should be considered an extreme position: When imposing a reduced sentence to give retroactive effect to the Fair Sentencing Act, a court must perpetuate a Guidelines calculation error that was an error even at the time of initial sentencing. Retroactive Guidelines errors based on intervening case law are no different from a typo, and they do not require a plenary resentencing to correct. *See supra* note 3. Under the First Step Act, Congress authorized the courts to provide a remedy for certain defendants who bore the brunt of a racially disparate sentencing scheme. In doing so, it did not import the strictures of § 3582(c)(2), even though it certainly could have. Perhaps it did not want to because it hoped for greater justice for individuals like Chambers. To self-circumscribe a sentencing court's authority under the First Step Act would not only subvert Congress's will but also undermine judicial integrity. It is one thing to ignore an error when we are explicitly told to do so, such as in the § 3582(c)(2) context; it is quite another to maintain a retroactive Guidelines error when we are not so told.

That being said, the government has also helpfully conceded some important points in this case. Because we must remand for further proceedings, we address these points now. First, it conceded that the § 3553(a) sentencing factors apply in the § 404(b) resentencing context. *See, e.g.*, Resp. Br. at 6–7, 10, 23. District courts across the country are applying the § 3553(a) factors in these First Step Act cases, and our peer circuits are also treating the factors as if they must apply. *See e.g.*, *United States v. Rose*, 379 F. Supp.

13

3d 223, 234 (S.D.N.Y. 2019) (holding that the § 3553(a) factors apply in a § 404(b) resentencing, because § 3553(a) "is triggered whenever a district court 'impose[s] a sentence,'" and § 404(b) uses the verb "impose" (alteration in original) (quoting 18 U.S.C. § 3553(a)); *see also infra* (discussing circuit cases). We agree, and now hold that they do. *See* U.S. Sentencing Comm'n, Office of Educ. & Sentencing Practice, *ESP Insider Express Special Edition, First Step Act* 8 (Feb. 2019) (stating that § 404 of the First Step Act "made no changes to 18 U.S.C. § 3553(a), so the courts should consider the Guidelines and policy statements, along with the other 3553(a) factors, during the resentencing").

Second, and relatedly, the government conceded that the resentencing court has discretion within the § 404(b) framework to vary from the Guidelines and, in doing so, to consider movants' post-sentencing conduct. Oral Arg. at 31:50–32:30, available at https://www.ca4.uscourts.gov/OAarchive/mp3/19-7104-20200128.mp3. In line with our peer circuits, we also agree that the court may vary from the Guidelines and may consider post-sentencing conduct. *Cf. United States v. Baronville*, No. 19-12107, 2020 WL 290654, at *2 (11th Cir. Jan. 21, 2020) (implicitly confirming that the district court may consider post-sentencing conduct, but holding that the court did not err by "failing to give greater weight" to such conduct in that case); *United States v. Jackson*, 945 F.3d 315, 322 n.7 (5th Cir. 2019) ("We do not hold that the court *cannot* consider post-sentencing conduct—only that it isn't required to."). In fact, we note that of the cases in which courts have granted a motion for sentence reduction under § 404 of the First Step Act, 28.2% of those resulted in below-range sentences. *See* U.S. Sentencing Comm'n, *First Step Act of 2018 Resentencing Provisions Retroactivity Data Report* 8, tbl. 5 (Oct. 2019).

14

Although the district court cannot vary downward from the corrected Guidelines range in this case due to the statutory minimum of 10 years, it may yet have occasion to consider Chambers's post-sentencing conduct. There are generally no limitations on the types of character and background information a court may consider for sentencing purposes. *See* 18 U.S.C. § 3661. As the Supreme Court explained in the context of a remand after direct appeal from a sentence, "[a] categorical bar on the consideration of postsentencing rehabilitation evidence would directly contravene Congress' expressed intent in § 3661." *See Pepper v. United States*, 562 U.S. 476, 491 (2011). Having concluded that the § 3553(a) factors apply in the § 404(b) context, post-sentencing evidence "may be highly relevant to several of [those] factors." *See id*. Indeed, we see no textual reason to conclude that Congress intended for § 404(b) to be an exception to § 3661. *See Rose*, 379 F. Supp. 3d at 231–35 (concluding that the court may consider post-sentencing evidence in light of *Pepper*, § 3661, and the use of the word "impose" in § 404(b)); *see also United States v. Payton*, 2019 WL 2775530, at *4 (E.D. Mich. July 2, 2019) (finding in the § 404(b) resentencing context "that the only way to impose a reduced sentence is to consider the § 3553(a) factors and Guidelines, including the defendant's record in prison.").

The record in this case strongly suggests that the district court did not believe that it had authority either to vary from the Guidelines or to consider Chambers's mitigating evidence. The court stated that it would "not reconsider any sentencing determinations independent of those affected by the Fair Sentencing Act, including the Defendant's classification as a career offender." *Chambers*, 2019 WL 3072641, at *2. It proceeded to

15

consider the § 3553(a) factors, though only to discuss pre-sentencing characteristics, such as the seriousness of the offense and Chambers's prior recidivism. The court never addressed Chambers's conduct in prison, although relevant information was included in the supplemental PSR. To the extent that the district court in this case believed it either could not vary or could not consider post-sentencing conduct under the § 3553(a) factors, it erred.[4]

## IV.

For the foregoing reasons, we vacate the district court's Order, and remand for further proceedings consistent with this opinion. On remand, the court should recalculate Chambers's Guidelines range without the career-offender enhancement. To the extent that it considers a sentence above the new mandatory minimum of 10 years, the court may consider post-sentencing conduct within the First Step Act framework.

*VACATED AND REMANDED*

---

[4] Given the particularities of this case, in which Chambers faces a statutory minimum that is higher than even the corrected Guidelines range, we decline to address whether the court *must* consider post-sentencing evidence at this time.

16

RUSHING, Circuit Judge, dissenting:

Modification of a final sentence requires express congressional authorization. The majority's decision sidesteps this statutory imperative and instead reasons that district courts are free—and here, required—to modify final sentences unless specifically prohibited from doing so. Congress enacted Section 404 of the First Step Act to retroactively reduce disparities between the crack and powder cocaine sentencing schemes; the statute is silent about other changes to a defendant's final sentence. The majority finds in this silence an implicit grant of authority to retroactively correct Sentencing Guidelines errors based on intervening law, an authority this Court has rejected in the context of collateral challenges to final sentences. I would instead conclude that 18 U.S.C. § 3582(c)(1)(B) authorizes only the modification "expressly permitted" by the First Step Act, which does not include reevaluating a defendant's career-offender Guidelines designation in light of a post-sentencing change in the law.

I.

A sentence of imprisonment "constitutes a final judgment." 18 U.S.C. § 3582(b). A court "may not modify a term of imprisonment once it has been imposed," except in narrow circumstances. 18 U.S.C. § 3582(c). As relevant here, a court "may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." 18 U.S.C. § 3582(c)(1)(B).

Section 404 of the First Step Act expressly permits a district court that imposed a sentence for a covered offense to "impose a reduced sentence as if sections 2 and 3 of the

17

Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." First Step Act § 404(b). This provision permits a district court to reduce a final sentence to account for the statutory changes wrought by Sections 2 and 3 of the Fair Sentencing Act. It does not expressly permit a district court to reduce a sentence based on any other intervening changes in the law.

The "narrow exception to finality provided by § 3582(c)(1)(B)," *United States v. Wirsing*, 943 F.3d 175, 184 (4th Cir. 2019), is limited to those changes "expressly permitted" by statute or Rule 35, and a final sentence may be modified only "to the extent" the statute or rule expressly provides, 18 U.S.C. § 3582(c)(1)(B). Because Section 404 of the First Step Act expressly permits a court only to reduce a sentence to account for Sections 2 and 3 of the Fair Sentencing Act, it does not authorize courts to modify a sentence to account for other changes in the law. Other changes are not "expressly permitted," so they are excluded. 18 U.S.C. § 3582(c)(1)(B); *see also United States v. Johnson*, 529 U.S. 53, 58 (2000) ("When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth."). "The express back-dating only of Sections 2 and 3 of the Fair Sentencing Act of 2010—saying the new sentencing will be conducted 'as if' those two sections were in effect 'at the time the covered offense was committed'—supports that Congress did not intend that other changes were to be made as if they too were in effect at the time of the offense." *United States v. Hegwood*, 934 F.3d 414, 418 (5th Cir. 2019). As the text makes clear, Congress's concern in Section 404 was to extend the cocaine sentencing provisions

18

of the Fair Sentencing Act retroactively, not to provide a general opportunity to collaterally attack a final sentence.

Another statute—28 U.S.C. § 2255—does give federal defendants an opportunity to collaterally attack their sentences. *See Wirsing*, 943 F.3d at 184 (identifying Section 2255 as a statute expressly permitting modification of a sentence under Section 3582(c)(1)(B)). But we rejected the availability of Section 2255 relief for the precise sentencing error Chambers raises here in *United States v. Foote*, 784 F.3d 931 (4th Cir. 2015). There, as here, the defendant was sentenced as a career offender under U.S.S.G. § 4B1.1(a) before our decision in *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc). Even though *Simmons* meant that the defendant had been erroneously sentenced as a career offender, we held that he was not entitled to collateral relief. We concluded that "sentencing a defendant pursuant to advisory Guidelines based on a career offender status that is later invalidated" is not a constitutional or jurisdictional error, nor is it "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Foote*, 784 F.3d at 936 (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). We refused "to undermine the judicial system's interest in finality" by stretching Section 2255 to classify a Sentencing Guidelines error as a fundamental defect. *Id.* at 932.

Well aware that the district court lacks authority to modify his sentence under Section 2255, Chambers has tried to circumvent that provision by smuggling a challenge to the career-offender enhancement into his First Step Act proceeding. As previously explained, the text of the First Step Act does not permit this expansion. Moreover, the detailed requirements and strict scope of Section 2255 illustrate that Congress does not idly

19

manufacture post-conviction remedies. An exception to sentence finality embedded in the silence of the First Step Act would be inconsistent with the principles undergirding our system of federal collateral review (much less with the text of Section 3582(c)(1)(B)).

## II.

The majority's reasoning turns Section 3582(c) on its head by finding authorization to modify a final sentence in the absence of "limiting language to preclude the court from applying intervening case law." Maj. Op. 10. But Congress has already told us how to interpret silence in this context: a court "may not modify a term of imprisonment" except "to the extent otherwise expressly permitted by statute or by Rule 35." 18 U.S.C. § 3582(c), (c)(1)(B). Rather than look for an additional prohibition, the majority should be looking for permission. Yet it does not identify any statute expressly permitting a court to modify a sentence to account for changes in the law concerning the proper application of the Sentencing Guidelines.

Applying the plainly stated limits of Section 3582(c)(1)(B) and the First Step Act would further, not "pervert," congressional intent. Maj. Op. 12. Congress's manifest intent in Sections 2 and 3 of the Fair Sentencing Act and Section 404 of the First Step Act is to reduce the disparity in crack and powder cocaine sentencing, not to correct Guidelines application errors. *See* Fair Sentencing Act Pub. L. No. 111-220 (Section 2 titled "Cocaine Sentencing Disparity Reduction"); *Wirsing*, 943 F.3d at 180. Neither Chambers nor the majority has identified anything in the text of the statutes or their legislative history indicating that Congress wished to create an avenue of post-conviction relief for defendants

20

bringing legal claims unrelated to crack cocaine sentencing. Nor is there any reason to think Congress would want to create a mechanism for pre-2010 crack offenders, but not other offenders, to gain the benefit of retroactive caselaw. Instead, the text of Section 3582(c) and the First Step Act, read together, evince a purpose to allow one specific type of sentence reduction in order to ameliorate the consequences of cocaine sentencing disparities.

The majority's only other textual argument is to note that Section 3582(c) and Section 3582(c)(1)(B), the mechanism by which the First Step Act permits sentence reduction proceedings, refer to "modify[ing]" a sentence, while Section 404(b) of the First Step Act refers to "impos[ing] a reduced sentence."[1] *See* Maj. Op. 9. The import of that difference is not apparent; given that both terms apply to a First Step Act proceeding, "impos[ing] a reduced sentence" is presumably a species of "modify[ing]" a sentence. *See*, *e.g.*, *Wirsing*, 943 F.3d at 184 ("The First Step Act thus fits under the narrow exception to finality provided by § 3582(c)(1)(B) because it expressly permits the court to modify a term of imprisonment." (internal quotation marks and emphasis omitted)); *Hegwood*, 934 F.3d at 418–419 ("[T]he sentencing is being conducted as if all the conditions for the original sentencing were again in place with the one exception" of the changes mandated by the Fair Sentencing Act; therefore, "[t]he new sentence conceptually substitutes for the original sentence, as opposed to modifying that sentence."). And any difference between

---

[1] Section 3582(c)(2), which permits a court to "reduce [a] term of imprisonment" based on a sentencing range lowered by the Sentencing Commission, does not re-use the term "modify," whereas Section 3582(c)(1)(B) does. Section 3582(c)(2) therefore does not provide a helpful contrast for the majority's argument on this point. *See* Maj. Op. 9.

21

"modify" and "impose" does not tell us whether the court is authorized (or as the majority would have it, required) to apply intervening changes in the law aside from the one change identified in the First Step Act. In any event, we cannot read the authorization to "impose a reduced sentence" in isolation from the phrase "as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed," which directly follows and modifies it. *See United States v. Morton*, 467 U.S. 822, 828 (1984) (stating that "[w]e do not . . . construe statutory phrases in isolation; we read statutes as a whole," and reasoning that words "must be read in light of the immediately following phrase").

The majority accuses the Government of taking an "extreme position" that would require a court to "perpetuate a Guidelines calculation error" by not applying intervening caselaw to change a sentence beyond the modification expressly articulated in the First Step Act. Maj. Op. 13. But the Supreme Court has rejected the argument that "any mistakes committed at the initial sentencing are imposed anew if they are not corrected" in a sentence modification proceeding. *Dillon v. United States*, 560 U.S. 817, 831 (2010). As the Court has explained, such an argument misunderstands the scope of sentence modification proceedings. *Id.* The majority casts aside *Dillon*, in which the Supreme Court rejected the argument that the district court should have applied intervening caselaw to correct Guidelines errors in the defendant's original sentence, because it concerned Section 3582(c)(2). *See* Maj. Op. 11–12. But the Court's reasoning was not confined to the special restrictions contained in that provision. In its primary analysis, the Court reasoned that the text of Section 3582(c)(2)—which permits "'modif[ication of] a term of imprisonment' by

22

giving courts the power to 'reduce' an otherwise final sentence" in specified circumstances—and its narrow scope—it applies only to a limited class of prisoners—show "that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon*, 560 U.S. at 825–826. The same can be said of the text and scope of Section 3582(c)(1)(B) and the First Step Act; *Dillon*'s reasoning on that score applies with equal force here.[2]

The majority's final argument is to liken "[r]etroactive Guidelines errors based on intervening case law" to typos, the implication being that surely a court possesses authority to correct such errors. Maj. Op. 13. But even a typo in a final sentence requires authorization to correct, and such authorization exists, not in inferences from statutory lacunae, but in plainly stated grants of authority. *See* Fed. R. Crim. P. 35(a) ("Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."); 28 U.S.C. § 2106 (providing that the Supreme Court and courts of appeals may "affirm, modify, vacate, set aside or reverse" any judgment lawfully brought before them and may remand for entry of judgment or further proceedings); 18 U.S.C. § 3742(f), (g) (providing for resentencing upon remand from a court of appeals).

Of course, the Guidelines enhancement error that the majority would retroactively correct here is not a simple typo. Correcting this error requires fashioning a new legal rule

---

[2] The majority largely fights a strawman in Section 3582(c)(2). *See*, *e.g.*, Maj. Op. 11–12. No one argues that "the strictures of § 3582(c)(2)," concerning application of 18 U.S.C. § 3553(a) and Sentencing Commission policy statements, apply here. But that does not render the Supreme Court's analysis in *Dillon*—which was not confined to those restrictions—inapplicable here.

23

that extends beyond our existing caselaw and creates considerable tension with our decision in *Foote*. *Simmons* addressed when a North Carolina offense is "punishable by imprisonment for more than one year" for purposes of 21 U.S.C. § 802(44). *See Simmons*, 649 F.3d at 239. In *Miller v. United States*, 735 F.3d 141 (4th Cir. 2013), we held that the *Simmons* rule for determining whether a North Carolina offense was "punishable" by imprisonment exceeding one year applied retroactively in the context of the federal felon-in-possession statute, 18 U.S.C. § 922(g)(1). *Miller*, 735 F.3d at 142, 146–147. We reasoned that, for defendants whose predicate convictions were North Carolina felonies for which they could not have received sentences of more than one year in prison, *Simmons* rendered those defendants "actually innocent of the . . . offense of which they were convicted," and because *Simmons* "altered the class of persons that the law punishes," it therefore announced "a substantive rule that is retroactively applicable." *Id.* at 146 (internal quotation marks omitted). In reaching that conclusion, we distinguished a situation in which a change in the law could not be used to retroactively modify a sentence because the change did not "place[] a class of persons beyond the [government's] power to punish or expose[] a defendant to punishment that the law cannot impose upon him." *Id.* at 147.

In *Foote*, we held that, when applied to a career-offender Guidelines enhancement, *Simmons* does not place a class of persons beyond the government's power to punish or expose a defendant to punishment that the law cannot impose upon him. *Foote*, 784 F.3d at 940–941. We therefore rejected an attempt to use *Simmons* to correct the Guidelines error on collateral review, noting, among other things that, "while the career offender

24

designation may have affected the ultimate sentence imposed, it did not affect the lawfulness of the sentence itself—then or now." *Foote*, 784 F.3d at 943 (internal quotation marks and brackets omitted). Read together, *Miller* and *Foote* teach that *Simmons* retroactively invalidates a sentence where the defendant is rendered actually innocent of the underlying conviction but cannot be used to collaterally attack a career-offender Guidelines enhancement.

Granting relief beyond that offered by the Fair Sentencing Act in this case, therefore, is not a straightforward application of existing law but an expansion, requiring, at a minimum, a *sub silentio* ruling on the retroactive effect of the *Simmons* error in a Guidelines-calculation context. Furthermore, in *Foote* we reasoned that the *Simmons* error was not cognizable on collateral review in part because "when it comes to errors in application of the Guidelines, it is hard to fathom what the dividing line would be between a fundamental defect and mere error." *Foote*, 784 F.3d at 943. The position adopted by the majority requires sentence modification for these "mere" Guidelines errors, relief we rejected in *Foote* as "deal[ing] a wide-ranging blow to the judicial system's interest in finality." *Id.* Indeed, the majority's reasoning opens the door to novel and far-reaching holdings, potentially greatly expanding the scope of First Step Act proceedings. Can a defendant argue that intervening precedent should be made retroactive for the first time in a First Step Act proceeding? Why is the question limited to intervening precedent at all? Under the majority's reasoning, there is no "limiting language" in the First Step Act preventing defendants who are eligible for a reduction from bringing any kind of legal attack on their original sentence. Maj. Op. 10. The majority opinion does little to cabin

25

the scope of cognizable legal errors in First Step Act proceedings and opens the door to an expansive new scheme of judicially created post-conviction relief.

III.

The majority also claims to issue two more holdings on issues that were not disputed by the parties in this Court or the district court: whether a district court must apply the Section 3553(a) factors in a First Step Act proceeding and whether a district court may consider post-sentencing conduct in that proceeding. *See* Maj. Op. 13–16. Those issues are not presented by this case, nor have they been subject to adversarial testing here. Bare reliance on parties' concessions is not how sound law is made. *See United States v. Bradley*, 917 F.3d 493, 511 (6th Cir. 2019) ("It is not our role to fashion new law without the benefits of the adversarial system, in which the parties evaluate the strengths and weaknesses of each other's arguments."); *cf. United States v. Robinson*, 460 F.3d 550, 558 (4th Cir. 2006) ("[O]ur judicial obligations compel us to examine independently the errors confessed," even where the government confesses error on appeal.). That is why it is our practice to avoid deciding questions when doing so is not necessary to resolve the central dispute in the case. *See*, *e.g.*, *United States v. Jackson*, 952 F.3d 492, 497 (4th Cir. 2020); *United States v. Venable*, 943 F.3d 187, 194 & n.11 (4th Cir. 2019). The record reveals no reason to think that the district court disagreed with the parties or would resist their consensus on remand, therefore I would not address these two uncontested issues.

26

* * *

Contrary to the majority's protests, *see* Maj. Op. 11–12, its decision puts us in conflict with our sister circuits on the interpretation of the First Step Act and the breadth of its sentence reduction proceeding. *See Hegwood*, 934 F.3d at 418–419 ("The district court [must] decide[] on a new sentence by placing itself in the time frame of the original sentencing, altering the relevant legal landscape only by the changes mandated by the 2010 Fair Sentencing Act."); *United States v. Carter*, 792 Fed. App. 660, 663 (11th Cir. 2019) ("[W]e reject [defendant's] argument that the First Step Act grants federal courts the broad authority to resentence a defendant based on subsequent changes in the law beyond those mandated by sections 2 and 3 of the Fair Sentencing Act."); *see also Venable*, 943 F.3d at 194 n.11 (quoting the *Hegwood* court's interpretation). Because the First Step Act's silence is properly interpreted as a restraint on district courts, not a license to further modify otherwise final sentences, I agree with our sister circuits and respectfully dissent.